ABRAHAM KULMAN, PLAINTIFF BELOW, DEFENDANT
IN ERROR, v. ERIE RAILROAD COMPANY, DEFEND-
ANT BELOW, PLAINTIFF IN ERROR.

Argued June 20, 1900—Decided November 19, 1900.

Upon the trial of an action against a railroad company for the negli-
gent manner in which its train was started from a station, there
was conflicting testimony from which the jury might conclude
that the plaintiff boarded the defendant's train as a passenger at
its Paterson station; that the train was not in motion when he
stepped on the lowest step of a car platform; that the platform
and step were crowded with passengers; that in this condition the
train started upon signals previously given by the conductor and
brakeman; that by the starting of the train the passenger in front
of the plaintiff was thrown against him and knocked off the step,
and that the conductor and brakeman who had stationed them-
selves between the car steps to see to the loading of the train, had,
after signaling to the engineer, left their posts and entered the
cars before the train actually started so that they did not see the
plaintiff at all. *Held,* that this was evidence to go to the jury
upon the question whether the servants of the defendant had failed
to use reasonable care to see that the plaintiff was not in such a
position that he would be likely to be endangered by the starting
of the train, and that a motion to nonsuit the plaintiff and a
motion to direct a verdict for the defendant were each properly
refused.

On error to the Passaic Circuit. Tried at the said Circuit
at the January Term, 1900, before Mr. Justice Dixon and a
jury.

The plaintiff had his foot cut off by a train of cars at the
defendant's station. The declaration alleged that the plaintiff
was a passenger in the defendant's train, and that the defend-
ant negligently caused its train to start after he had boarded
it and before he had reached a place of safety, whereby he was
thrown under the wheels of the train and injured. There was
a verdict for the plaintiff. . The testimony upon the material
points was variant, if not conflicting; the nature of the dis-
crepancies sufficiently appear in the opinion.

For the plaintiff in error, *Corbin & Corbin.*

For the defendant in error, *Francis Scott.*

The opinion of the court was delivered by

GARRISON, J.   There are two assignments of error; one for the refusal of the Circuit Court to nonsuit the plaintiff, the other for its refusal to direct a verdict for the defendant.   The motions differ only in that upon the motion to nonsuit one of the grounds was the contributory negligence of the plaintiff; in other respects the two motions rested upon the same grounds, viz., that there was no proof of the negligence of the defendant, and that the independent intervention of a third person was the immediate cause of the plaintiff's injury.

The plaintiff's case, briefly stated, was that he boarded the defendant's train as a passenger at the Paterson station; that the train was not in motion when he stepped upon the lowest step of the platform, where, owing to the crowd of people on the platform, he was obliged to remain; that while in this position the train started and caused the passenger in front of him to fall against him so that he lost hold upon the grip-irons and fell under the train.

Laying aside, for the moment, the question of the plaintiff's contribution to this accident, the defendant's case was that ample time was given for passengers to get on the train, and that the conductor and brakeman, who had stationed themselves between the steps of the car to see to the loading of the train, seeing no one coming to the train, signaled to the conductor to start, and that they then left their posts and went into the cars, so that they did not see the plaintiff at all. Other witnesses testified that they saw the plaintiff get onto the train while it was in motion.

To extract the facts from these contradictory oaths is peculiarly a jury function.   Upon each of the motions that was made the court was bound to assume that the jury might find that the train had not moved off when the plaintiff boarded it, and that, upon all other testimony, the inference most favorable to the plaintiff would be placed.   This being so, the

case presented would call for the further opinion of the jury upon the question whether the defendant's servants in charge of its train had failed to exercise reasonable care to see that the plaintiff was not in such a position when the train started that its starting would be likely to endanger him. It is the duty of the train hands at a railroad station to use reasonable care to see that the train does not start at a time when passengers who are taking the train are in a position where the starting would probably endanger them. Whether this care shall be exercised by controlling the train, by aiding the passengers, by preventing them from boarding the cars, or in some other way, depends upon the circumstances of the given case, and is in the domain of fact; that the degree of care exhibited shall be such as is reasonable, in view of all the circumstances, is a matter of law. Whether, in the case in hand, the trainmen exercised the legal degree of care by giving the signal to start when no one appeared to be about to board the train, and then withdrawing into the cars before the train actually started, may be open to debate; but the debate must be before the jury; it is not in any aspect a court question.

If, instead of going into the cars after giving the signal to start, the conductor and brakeman had remained at their posts until the train started, and had seen the plaintiff, and had not used reasonable care to aid him or to avert the probable danger to which the starting of the train would expose him, the jury nature of the question would be apparent to everyone. How the situation is altered in a manner favorable to the defendant's contention by the additional fact that the train hands absented themselves entirely from their posts before the train actually started, is not apparent.

Many, if not all, of the facts resolved by the jury in favor of the plaintiff were strenuously, and it may be, preponderatingly denied by the witnesses of the defendant; but such conflicts do not lead to the direction of a verdict. I am satisfied that, so far as the refusal of these two motions is concerned, the learned judge who tried the cause took the only course open to him.

The question of the contributory negligence of the plaintiff, which was put to one side in considering the main issue, remains to be spoken of. There is, however, really nothing to be said. A certain number of witnesses say that the train was standing still when the plaintiff got upon the steps of the car; a larger number say he got on while the train was in motion. No proposition of law is involved in the leaving of this conflict of testimony to the jury; none is of any avail in this proceeding to right the party who is wronged by the verdict, if such a thing is conceivable in the terms of legal thinking.

The bills of exception disclose no error. The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, GARRISON, COLLINS, FORT, BOGERT, HENDRICKSON, VREDENBURGH, VOORHEES. 10.

*For reversal*—None.