HERMAN SCHMIDT, DEFENDANT IN ERROR, v. THE NORTH JERSEY STREET RAILWAY COMPANY, PLAINTIFF IN ERROR.

Argued February 20, 1901—Decided June 10, 1901.

The plaintiff sued the defendant, operating an electric street railway, for personal injuries received in an attempt to board a car as a passenger. The evidence showed that, at the lower corner of a street intersecting that on which ran the line of the railway, a group of intending passengers stood awaiting a car; that the plaintiff crossed to the upper corner and stood there, with others, as a car was approaching; that he waved his hand toward the car, which slackened its speed, but did not stop; that two passengers got safely on the car; that the plaintiff seized the hand-rail and placed one foot on the step and, with the other on the ground, was dragged along until he came in contact with some railroad ties, near the track, in the middle of the intersecting street, when he lost his hold, and was injured. The plaintiff and one witness testified that the speed of the car increased after he had taken hold of the railing; another witness for the plaintiff and several witnesses for defendant testified that there was no increase, but, instead, a decrease of the speed of the car. No proof was offered that the motorman in any way indicated that he meant to stop at the upper corner, and he testified that he did not notice anyone there. *Held*, that a verdict in favor of the defendant should have been directed (1) because, on the facts stated, a jury could not fairly find negligence chargeable to the defendant, and (2) because, with the railroad ties in full view, the plaintiff assumed all risk of injury from them when he attempted to get on the moving car.

On error to the Essex County Circuit Court.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the plaintiff in error, *George T. Werts.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

COLLINS, J. This writ of error reviews a judgment recovered on verdict, and the only question necessary to be con-

sidered is that presented by bills of exceptions sealed upon the refusal of the trial judge to nonsuit the plaintiff or to direct a verdict in favor of the defendant. The plaintiff lived in the village of Irvington, and was accustomed to travel to and from his place of business in the city of Newark, a few miles distant, upon the electric street railway of the defendant. On the morning of May 1st, 1899, he walked from his home to Springfield avenue, down which the railway ran. At the lower corner of Union street and the avenue there was a group of people waiting to take a car. Instead of waiting with them he crossed Union street to the upper corner, where a few other persons were standing. As an approaching car came near to Union street it slackened speed, and as it passed the upper corner two other passengers got upon the rear platform while the car was still in motion, and he attempted to follow them. He seized the railing and placed one foot on the step of the car, and just then, as he testified, the speed of the car was increased, and before he could get entirely on the car he came in contact with some railroad ties that lay in the middle of the roadway of Union street, near the line of the car track, and sustained serious injuries; and to recover compensation for those injuries he brought his suit. The negligence charged against the defendant is the sudden increase of the speed of the car and the improper maintenance of the railroad ties in the highway. It appeared in the case that the ties were placed where they were to prevent vehicles passing along Union street from driving on to the defendant's track at a point where it would be dangerous for them to do so by reason of some repairs or changes then in progress, and that they were so placed by the foreman of one B. M. Shanley, who was doing the work, and whose relation to the company. was not proved. If the defendant could, for any purpose, be held responsible for the maintenance there of the ties, it is quite clear it could not be chargeable with negligence toward an intending passenger, for they were not at a place where it could reasonably be supposed by anyone that a car would stop to receive or discharge passengers. In the absence of any

contrary indication the place for a street car to stop at an intersecting street is opposite a sidewalk.

The plaintiff's case had no support whatever, unless upon the other ground, namely, a negligent increase of the speed of the car. While it is not necessarily a negligent act to get on or off a slowly-moving street car, yet, in order to charge negligence upon the person controlling the propulsion of the car, some affirmative act of his showing a lack of due care for the probable contingency of passengers getting on or off must be proved. In the case in hand, for example, it would have been necessary to prove that the motorman increased the speed of the car at a time when he had reasonable cause to suppose that a passenger might be in the act of getting upon it. It is almost common knowledge that the normal stopping place of an electric street car, at an intersecting street, is after crossing the roadway of that street. Hence, the group of passengers awaiting the car, which the plaintiff tried to board, stood at the lower, and not at the upper, corner of Union street. The motorman necessarily has to slacken his speed and then shut off his power entirely in order to make the normal stop, and if, through miscalculation, the momentum of the car will not carry it far enough, he may have to again apply the power, and it may happen that for other causes, such as the movement of persons and vehicles having equal rights in the street, he may be obliged to check and then accelerate his speed. It is too much to expect that in these operations he must always anticipate that persons standing on the upper corner of the street may be expecting to board the moving car. The plaintiff testified that the cars of this line sometimes stop at the upper corner of the street, and that on this occasion he waved his hand to the motorman; but he did not testify to any act of the motorman indicating notice of the signal or a purpose to acquiesce in the boarding of the car, as it moved along, by the persons standing at the upper corner of the street. The motorman himself testified that he did not notice any motion for him to stop from anyone on the upper corner; did not, in fact, observe or pay attention to anyone there, but simply made a gradual decrease of speed

in order to stop, as he did every day, at the lower corner, where, on this morning, he saw the usual group of waiting passengers. There was hardly enough proof to go to the jury of an increase after slackening of the speed of the car. The plaintiff's belief that the car did go faster is easily understood by anyone who has ever tried to board a moving car propelled by electricity. It is very easy to underestimate before the act the rate of speed which is found to exist after the attempt is made. The only witnesses who observed the accident and were called by the plaintiff were Charles Thren and Murton V. Owen. Thren testified merely that the plaintiff went to take hold of the handle as the car slowed down, and it started right on again when he had hold of the handle; but Owen testified as follows:

"*Q.* What did you see?

"*A.* I saw some passengers get on, and I saw Schmidt attempt to get on, but he was dragged.

"*Q.* Then tell what you saw and how he got on?

"*A.* Well, I saw him partly on the car.

"*Q.* Yes?

"*A.* Perhaps I may have been forty feet away.

"*Q.* Well, he was partly on the car, and what was the car doing?

"*A.* Well, the car was slacking up, I think.

"*Q.* Yes, then what did the car do?

"*A.* Well, it kept right on, and I know that—I couldn't say whether it went faster—I think perhaps it might have went slower, but it kept on at least.

"*Q.* Then what happened?

"*A.* And it dragged Mr. Schmidt over these ties."

The witnesses for the defendant testified that after the speed slackened it continued to decrease until the car stopped.

Giving the full effect due, in a review by writ of error, to the testimony adduced in favor of the plaintiff's contention, we are of opinion that there was none on which a jury could fairly find negligence chargeable to the defendant; and that, with the railroad ties in full view, the plaintiff assumed all risk of injury from them when he attempted to get on the

moving car.  A verdict in favor of the defendant should have been directed.

It should be noticed that the only claim in the plaintiff's declaration of his right of action is as follows: "And the said plaintiff [avers] that at Irvington, to wit, at Newark, in the county of Essex aforesaid, the said defendant carelessly, negligently and improperly suffered and permitted its said car to be slackened and stopped at a place along said Springfield avenue which was out of repair, obstructed, unsafe and dangerous, so that the said plaintiff, who was then and there intending to be and become a passenger on said car, who was then and there invited by the said defendant, by its servants, to be and become a passenger of said car, and who then and there had no notice or warning that the place at which the said car had slackened and stopped for him, the said plaintiff, to board the same was out of repair, obstructed, unsafe and in a dangerous condition, and while he, the said plaintiff, was then and there in the act of boarding said car he, the said plaintiff, fell, by reason of the plaintiff's foot being caught in some railroad ties which the said defendant had placed in close proximity to the place where the said plaintiff was necessarily obliged to board the said car, and by reason of the unsafe, obstructed and dangerous condition of the place then and there furnished and provided by the said defendant for him, the said plaintiff, as access to the said car, and whereby the said plaintiff then and there sustained a broken leg," &c. There was no proof whatever of the facts averred.

The judgment is reversed, and a *venire de novo* will be awarded.