[No. 4770.   Decided June 21, 1904.]

W. J. ALLEN, *Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

CARRIERS—RAILROADS—NEGLIGENCE—PRESUMPTION FROM ACCIDENT TO PASSENGER.   The fact of an injury to a passenger on a railroad train does not alone raise a presumption of negligence in all cases regardless of the circumstances and nature of the accident.

SAME—SUDDEN LURCH OR JERK AS EVIDENCE OF NEGLIGENCE. That an injury to a passenger was due to a sudden lurch or jerk imparted to a train is not prima facie proof of negligence, where it appears that the same was necessary to effect the movement of the train up an incline from a ferry boat.

SAME—OBSTRUCTION NEAR TRACKS—NECESSARY SUPPORT FOR RAILROAD FERRY.   That a passenger on a railroad train slowly moving from a ferry boat was injured while attempting to board the train by coming in contact with a post twenty-six inches from the car, is not prima facie proof of negligence when it appears that the post was a necessary support or appliance for the operation of the ferry as constructed.

SAME — INJURY TO PASSENGER WHILE MOVING TRAIN FROM FERRY BOAT—EVIDENCE OF NEGLIGENCE—SUFFICIENCY. In an action against a railroad company brought by a passenger for personal injuries, there is no evidence of negligence upon the part of defendant warranting a submission of the case to the jury, where it appears that the plaintiff alighted from the train for the purpose of getting breakfast while it was being ferried across the Columbia river, as he was told that he could do, and upon learning that the train was being moved off the boat, he attempted to board the train while it was moving slowly, no warning being given to him that it was dangerous so to do, and while in such act, lost his balance by reason of a sudden lurch necessarily imparted to the train in moving it off the boat, bringing plaintiff in contact with an upright twenty-six inches from the platform of the car, which was a necessary support for the operation of the boat; since there was no duty to warn and there is no presumption of negligence from an injury to a passenger under such circumstances (HADLEY and DUNBAR, JJ., dissenting).

[1]Reported in 77 Pac. 204.

Appeal from an order of the superior court for King county, Albertson, J., entered April 14, 1903, after a trial on the merits, setting aside the verdict of a jury rendered in favor of the plaintiff, and granting a new trial. Affirmed.

*Walter S. Fulton* and *Vince H. Faben,* for appellant. The court erred in setting aside the verdict upon the ground that there was no proof of defendant's negligence, after the jury had found that there was such negligence. *Tibbals v. Mt. Olympus Water Co.,* 10 Wash. 329, 38 Pac. 1120; *Brookman v. State Ins. Co.,* 18 Wash. 308, 51 Pac. 395; *Morris v. Frye-Bruhn Co.,* 20 Wash. 257, 55 Pac. 50; *Lane v. Spokane etc. R. Co.,* 21 Wash. 119, 57 Pac. 367, 75 Am. St. 821, 46 L. R. A. 153; *Traver v. Spokane etc. R. Co.,* 25 Wash. 225, 65 Pac. 284; *Latimer v. Baker,* 25 Wash. 192, 64 Pac. 899; *Jordan v. Seattle,* 26 Wash. 61, 66 Pac. 114; *Richmond R. Co. v. Powers,* 149 U. S. 43, 13 Sup. Ct. 748; *Northern Pac. R. Co. v. Adams,* 116 Fed. 324. An injury to a passenger raises a presumption of the carrier's negligence. *Gleeson v. Virginia Midland R. Co.,* 140 U. S. 435, 11 Sup. Ct. 859; *McCurrie v. Southern Pac. R. Co.,* 122 Cal. 558, 55 Pac. 324; Sherm. & Redf., Negligence, § 59; 3 Thompson, Comm. Law of Neg., § 2830. A sudden lurch or jerk is prima facie evidence of negligence. 5 Am. & Eng. Enc. Law, 573; *Consolidated Traction Co. v. Thalheimer,* 59 N. J. L. 474, 37 Atl. 132; *Osgood v. Los Angeles Traction Co.,* 137 Cal. 280, 70 Pac. 169, 92 Am. St. 171; *Dixie v. Philadelphia Traction Co.,* 180 Pa. St. 401, 36 Atl. 924; *Doolittle v. Southern R. Co.,* 62 S. C. 130, 40 S. E. 133; *Parlier v. Southern R. Co.,* 129 N. C. 262, 39 S. E. 961; *Scott v. Bergen etc. Co.,* 63 N. J. L. 407, 43 Atl. 1060; *Kulman v. Erie R. Co.,* 65 N. J. L. 241, 47 Atl. 497;

*McCurrie v. Southern Pac. R. Co., supra; Choate v. San Antonio etc. R. Co.,* 90 Tex. 82, 36 S. W. 247, 37 S. W. 319; *Houston etc. R. Co. v. Rowell* (Tex.), 45 S. W. 763; *Baltimore & O. R. Co. v. Kane,* 69 Md. 11, 13 Atl. 387, 9 Am. St. 387; *Distler v. Long Island R. Co.,* 151 N. Y. 424, 45 N. E. 937, 56 Am. St. 630, 35 L. R. A. 762. It was for the jury to say whether defendant was negligent in maintaining an obstruction within 26 inches of the platform of the car. *North Chicago St. R. Co. v. Williams,* 140 Ill. 275, 29 N. E. 672; *Anderson v. City etc. R. Co.,* 42 Ore. 505, 71 Pac. 659. Defendant was negligent in failing to warn plaintiff of the danger. 5 Am. & Eng. Enc. Law (2d ed.), 581; *Kulman v. Erie R. Co.,* 65 N. J. L. 241, 47 Atl. 497; *Houston etc. R. Co., v. Pereira* (Tex.), 45 S. W. 766.

*James F. McElroy* and *B. S. Grosscup,* for respondent. Under the testimony the sudden acceleration of speed was not negligent. *Blakney v. Seattle Electric Co.,* 28 Wash. 608, 68 Pac. 1037; *Etson v. Ft. Wayne etc. R. Co.,* 110 Mich. 494, 68 N. W. 298; *Bradley v. Ft. Wayne etc. R. Co.,* 94 Mich. 35, 53 N. W. 915; *Black v. Third Ave. R. Co.,* 37 N. Y. Supp. 830; *Hoffman v. Third Avenue R. Co.,* 61 N. Y. Supp. 590; *Armstrong v. Metropolitan St. R. Co.,* 48 N. Y. Supp. 597; *Schmidt v. North Jersey St. R. Co.,* 66 N. J. L. 424, 49 Atl. 439; *Pitcher v. Peoples St. R. Co.,* 174 Pa. St. 402, 34 Atl. 567; *Hite v. Metropolitan St. R. Co.,* 130 Mo. 132, 32 S. W. 33, 51 Am. St. 555; *Picard v. Ridge Ave. etc. R. Co.,* 147 Pa. St. 195, 23 Atl. 566; *Byron v. Lynn etc. R. Co.,* 177 Mass. 303, 58 N. E. 1015; *Jones v. New York etc. R. Co.,* 156 N. Y. 187, 50 N. E. 856, 41 L. R. A. 490. Under the circumstances, no inference of negligence can be drawn from the maintenance or position of the upright. *Georgia etc.*

*R. Co. v. Cartledge,* 116 Ga. 164, 42 S. E. 405, 59
L. R. A. 118; *Moore v. Edison etc. Co.,* 43 La. Ann. 792,
9 So. 433; *Craighead v. Brooklyn City R. Co.,* 123 N. Y.
391, 25 N. E. 387; *Favre v. Louisville & N. R. Co.,* 13
Ky. 116, 16 S. W. 370. An accident to a passenger
while in the carrier's charge does not necessarily raise a
presumption of negligence. *Hawkins v. Front St. Cable
R. Co.,* 3 Wash. 592, 28 Pac. 1021, 28 Am. St. 72, 16
L. R. A. 808; *Rothchild v. Central etc. R. Co.,* 163 Pa.
St. 49, 29 Atl. 702; *Baltimore etc. Road v. Cason,* 72
Md. 377, 20 Atl. 113; *Saunders v. Chicago etc. R. Co.,*
6 S. D. 40, 60 N. W. 148; *Byron v. Lynn etc. R. Co.,
supra; Cincinnati etc. R. Co. v. Jackson,* 22 Ky. L. 630,
58 S. W. 526; *Picard v. Ridge Ave. etc. R. Co., supra.*

PER CURIAM.—This action was brought in the superior
court of King county, by W. J. Allen, plaintiff, against
Northern Pacific Railway Company, a corporation, de-
fendant, to recover compensation for personal injuries.
The cause was tried before the court and a jury. A ver-
dict was returned for plaintiff, which, upon the motion
of defendant, was set aside and a new trial granted by the
lower court, upon the sole ground, as stated in the record,
"that the evidence introduced at the trial herein failed
to show any act or acts of negligence on the part of the
defendant." The plaintiff excepted, and appealed from
the order granting the new trial. The only error assigned
is that the trial court erred in making said order. The
court having stated the ground of its decision in the
order granting the new trial, the sole proposition pre-
sented for our consideration upon this appeal is whether
any act or acts of negligence on the part of respondent
appeared in the evidence which became a question for the

consideration of the jury at the trial. *Gray v. Washington Water Power Co.*, 27 Wash. 713, 68 Pac. 360.

On January 13, 1902, appellant, W. J. Allen, was a passenger on one of respondent's trains, bound from Portland, Oregon, to Seattle, Washington. When this train reached the Columbia river, an employe thereon informed appellant that he would have sufficient time in which to get breakfast on the ferry. Thereupon, the appellant left the train, went into the restaurant on the ferry, and ordered his breakfast. Ordinarily the time occupied in crossing this river on the ferry was about 20 minutes. Soon after commencing his meal, he heard the train give what he believed to be a signal for its departure from the ferry. The man in charge of this eating house said to appellant, "You better hurry up; the train will pull out and leave you." Mr. Allen testified in this connection, on his direct examination, as follows:

"So I just quit eating right there and paid him for my meal, and walked out, and as I went out the train was moving off. Q. Let me ask you right there, where was the train when you went out, with reference to where you were, that is, on the ferry? A. Well, it was towards the other end of the boat. Q. That is, it was towards this side, the Washington side? A. Towards the Washington side, yes sir. Q. And you saw it moving, did you, as you come out? A. Yes sir. Q. And believed that to be your train, did you? A. Yes sir. Mr. McElroy: I object, now, to the leading of the witness, if the court please. The Court: I think the questions are leading. Q. What did you do, then, upon coming out and seeing your train? A. Well, I saw the train moving out, and started to catch the train, and I started with a little run to catch it, and it was close to the other end of the ferry, and as I jumped on the step of the platform—on to the platform of the last car, why I got one foot on and stepped up to the second step, and as

I did so the train gave a very sudden lurch or jerk and overbalanced me and throwed me off the car, and I struck some timber or piling or something—I don't know what.  Q.  How fast was the train moving when you came out of the eating house there?  A.  Well, it was not going fast at all.  I did not have no trouble to catch it. I have often caught trains  .  .  .  It was not going over a mile an hour, I don't think.  .  .  .  Q.  Now, where was this obstruction, with reference to the right of way or the passage way leading from the ferry up on to the main land?  .  .  .  A.  Well, it could not have been only just—it was right close to the car, because I remember when I overbalanced on the step with the jerk—with the forcible jerk that the engine or the car gave—it overbalanced me, and I just tipped backwards and it struck me some way; I don't know how."

Appellant suffered severe injuries and was picked up in an unconscious condition, in which state he remained for several days.  Appellant testified that he received no warning that he should not board the train.  Timothy Mahoney, a witness for respondent, testified in part, that in January, 1902, he was a deckhand on this ferry boat; that witness had his regular work to perform; that it was witness' duty, if he saw anybody about to board the train who he thought was liable to get hurt, to stop him.  "The train was in motion; Mr. Allen made a move to get on the train, and I told him not to get on; and that is all there is to it."  E. E. Weymouth, one of respondent's witnesses, testified that he was the supervisor of bridges and buildings on the Pacific division of the respondent company; that the clearance between the platform of the coach and the lever or upright, with which appellant came in contact when injured, was about 26 inches; that this appliance was absolutely necessary for the operation of the pontoon and the receiving of the ferry boat.  It also appeared by the testimony that the engine, while attached

to the cars, first moved slowly, and then, as the incline from the ferry to the station at Kalama was approached, it was necessary to increase the speed in order to make the ascent. It would seem from the evidence that the cars must have been in motion for at least 200 feet, when appellant boarded this particular car. The following statement, explanatory of appellant's contentions, appears in the brief of his counsel:

"The acts of negligence which were alleged, and found by the jury, to have caused appellant's injuries were, the failure of respondent to provide facilities which would have enabled the appellant to safely board the train; starting the train suddenly after appellant had boarded the same; and placing and maintaining in the passage and right of way leading from the ferry a pile, or obstruction of like nature, which rendered the right of way dangerous to passengers situated as was appellant on trains leaving the ferry."

The jury, by its verdict, affirmed that appellant was free from contributory negligence in boarding the train, and that he was not warned against so doing by any employe of respondent. All conflict in the testimony was settled by the jury. Therefore the sole question raised on this record is, whether the evidence adduced at the trial shows, or tends to establish, that appellant was injured by the negligence of respondent company, as alleged. Appellant, under the issues as formulated by the pleadings, assumed the burden of proof in that behalf.

The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same inference from them, and when the conclusion follows, as a matter of law, that no recovery can be had upon any view which can properly be taken of the facts the evidence tends to establish. *Towle v. Stimson Mill Co.,* 33 Wash. 305, 74 Pac. 471.

It is urged by appellant that, whenever a passenger is injured by something which is under the control of the carrier, the fact of the injury is itself prima facie evidence of negligence on the part of the carrier. In *Hawkins v. Front Street Cable R. Co.*, 3 Wash. 592, 28 Pac. 1021, 16 L. R. A. 808, 28 Am. St. 72, which was an action to recover compensation for injuries sustained by Marie Hawkins, one of the respondents, while she was a passenger riding upon one of appellant's street cars, the trial court, among other things, instructed the jury that, "It is the law that where a passenger being carried on a train is injured without fault of his own, there is legal presumption of negligence, casting upon the carrier the burden of disproving it." This court held that, "Such is not the law as laid down by very numerous authorities." At page 597, in the opinion delivered by Stiles, J., the following language from *Meier v. Pennsylvania R. Co.*, 64 Pa. St. 225, 3 Am. Rep. 581, is quoted with approval:

"Prima facie, where a passenger, being carried on a train, is injured without fault of his own, there is a legal presumption of negligence, casting upon the carrier the onus of disproving it. This is the rule when the injury is caused by a defect in the road, cars or machinery, or by a want of diligence or care by those employed, or by any other thing which the company can and ought to control as a part of its duty, to carry passengers safely; but this rule of evidence is not conclusive."

Again, in the opinion of the court in *Klepsch v. Donald,* 8 Wash. 164, 35 Pac. 622, this language is used: "A passenger on a railroad train is injured, and the fact of injury alone does not sustain a charge of negligence; but if the train was derailed by reason of a broken wheel, the presumption arises that the carrier was negligent in not providing a sound one." In *Gleeson v. Virginia Mid-*

*land R. Co.,* 140 U. S. 435, 11 Sup. Ct. 859, 35 L. Ed. 458, the court held that an accident, happening to a passenger riding on the railway of the carrier, caused by the train coming in contact with a land slide, raises, when shown, a presumption of negligence on the part of the carrier, and throws upon it the burden of showing that the slide was in fact the result of causes beyond its control. The general language employed in the court's opinion, quoted by the appellant, should be considered with reference to the facts of the particular case decided.

"It is, therefore, too broad a statement of the rule to say that, in all cases, a presumption of negligence on the part of the carrier arises from the mere happening of the accident or an injury to a passenger regardless of the circumstances and nature of the accident. The true rule would seem to be that when the injury and circumstances attending it are so unusual and of such a nature that it could not well have happened without the company being negligent, or when it is caused by something connected with the equipment or operation of the road, over which the company has entire control, without contributory negligence on the part of the passenger, a presumption of negligence on the part of the company usually arises from proof of such facts, in the absence of anything to the contrary, and the burden is then cast upon the company to show that its negligence did not cause the injury." 4 Elliott, Railroads, § 1644, and authorities cited.

In *Fearn v. West Jersey Ferry Co.,* 143 Pa. St. 122, 22 Atl. 708, 13 L. R. A. 366, the court said:

"The cause of the accident was known as well to the appellant as to the company. In such case the presumption of negligence. arising from the mere fact that a passenger was injured while on the appellant's boat has no application. . . . As the appellant failed to show any omission or violation of duty by the company, in connection with the cause of the accident, we think the nonsuit was properly ordered."

The presumption "arises not from the naked fact that an injury has been inflicted, but from the cause of the injury, or from other circumstances attending it." *Pennsylvania R. Co. v. MacKinney,* 124 Pa. St. 462, 17 Atl. 14, 2 L. R. A. 820, 10 Am. St. 601. In a case where the fact of no negligence is fixed by the proofs, a mere presumption cannot overcome it. *Bernhardt v. West Penn. R. Co.* 159 Pa. St. 363, 28 Atl. 140. See, also, exhaustive note, *Barnowski v. Helson,* 15 L. R. A. 33. *Etson v. Ft. Wayne etc. R. Co.* 110 Mich. 494, 68 N. W. 298, was an action to recover damages for alleged negligence on the part of the carrier. The point decided is succinctly presented in the syllabus: "In an action against an electric street railway, by a passenger for personal injuries, evidence merely that plaintiff, who was upon the platform to alight as soon as the car, which was slowing up, stopped at the far side of the street, its usual stopping place, was thrown from the car, by a sudden jerk, when the car was only halfway across the street, is insufficient, in the absence of evidence as to the cause of the sudden jerk, to warrant a recovery by plaintiff." If this proposition be correct, it follows logically, that, if it had appeared that such lurch was necessary to effect a legitimate purpose, there would have been no negligence on the part of the railroad company. See, further, *Schmidt v. North Jersey St. R. Co.,* 66 N. J. L. 424, 49 Atl. 438.

The able counsel for appellant argue that the case of *Anderson v. City & Sub. R. Co.,* 42 Or. 505, 71 Pac. 659, is an authority directly in point in support of their contentions in the present controversy. It appeared that a street railway company constructed its tracks so near the superstructure of a bridge as to leave only eighteen inches between the frame thereof and the outer edge of the foot-

board of its open cars; that a passenger, while riding on the footboard, with the knowledge and consent of the carrier—the seats inside of the car all being occupied—was injured by coming in contact with a strut of the bridge; and there was evidence tending to show that the car was going at an unlawful rate of speed, and that no warning was given. It was held—and we think correctly—that the company's negligence was a question for the jury.

In the case at bar it is not pretended that appellant, when injured, was on this particular step or platform of respondent's car with the knowledge or consent of any of respondent's servants or trainmen. The engine and cars thereto attached had proceeded a considerable distance from their starting point on the ferry, when appellant boarded the car without invitation, express or implied, on the part of respondent. In so doing, could he impose upon respondent company the duty of warning him of possible danger? Was the respondent bound, at its peril, to know that a passenger was liable to board one of its cars while in motion, at an unusual place, just as the engine was about to make the ascent of this incline? We think that these questions must be answered in the negative.

The lurch or jerk of the car on which appellant was riding, and of which he complains, was occasioned by the increase of power necessary to ascend such incline. We fail to see how the appellant can justly charge negligence on respondent or its servants, by reason of such sudden movement of the engine and cars, under the evidence and circumstances as disclosed by this record. True, this lurch caused appellant's body to swing out about twenty-six inches from the car, which brought him in contact with the upright; but it appeared in evidence that this appli-

ance was necessary to operate the pontoon, and there was no testimony tending to show that it was in a dangerous position.

The verdict of the jury settled the question in appellant's favor that he received no warning at or about the time he boarded the car in question. Still, we think that respondent was not bound to warn passengers against boarding its cars, under the circumstances shown by this record. A carrier, acting as a prudent and careful person with a proper regard for human safety, cannot be held as an insurer against all possible accidents happening to its passengers, in consequence of boarding its trains at unusual places, while in motion, and coming in contact with objects near the railway track rightfully placed there for the purpose of operating its line of railroad. We are unable, after a careful research, to find any authority which goes to the extent for which appellant contends.

Appellant quotes from *North Chicago St. R. Co. v. Williams,* 140 Ill. 275, 29 N. E. 672, the following paragraph: "Where a railroad company places its tracks so near an obstruction, which it is necessary for its cars to pass, that its passengers, in getting on and off the cars and while upon them, are in danger of being injured by contact with such obstruction, it is a fair question for the jury whether the company is or is not guilty of negligence." But that case is plainly distinguishable in principle from the action at bar. The court then adds: "The negligence charged against the company is, that it placed the temporary track too near the curb line of the street and the telegraph poles on the east side thereof." Plaintiff Williams boarded one of defendant's cars propelled by horse power, while the car was in motion, came in contact with the telegraph pole, and was injured. An important

feature in the case is mentioned in the opinion: "When an open car was passing, there were from nine to twelve inches between the telegraph pole and the east ends of the seats; and if a man stood on the rail or platform running along the east side of an open car passing that point, the distance between his shoulders and the pole would vary from two to five inches in different cars." The evidence tended strongly to show that the street railroad company was negligent in laying its temporary track so near the telegraph pole which was an obstruction. This pole was in no sense an appliance necessary to operate its business pertaining to the conveyance of its passengers along its line of road. In that case the proof also showed that the conductor saw the plaintiff before he stepped upon the car, and shouted to him to "look out," just before he was struck by the pole. In the present controversy, it is not claimed that the conductor or any of the train crew saw appellant board the car, or had any reason to believe that he had placed himself in a position to receive injuries, when the engine and car made this sudden movement which became necessary, under the evidence, as we have heretofore stated. While it has been held that boarding a slowly moving train of cars is not *per se* negligence on the part of the passenger, in case of accident resulting therefrom, still, it would seem to follow, as a corollary of this proposition and as a logical sequence, that the carrier ought not to be held liable for actionable negligence in such cases, unless the passenger is able to show affirmatively that the carrier was in some manner at fault in causing the injuries for which damages are sought to be recovered. Elliott, Railroads, *supra,* and citations.

Applying the foregoing propositions of law to the facts in this controversy, we think that the evidence fails to

make out a case of actionable negligence against respondent, that the trial court committed no error in granting the motion for a new trial, and that the order appealed from should be affirmed.

HADLEY, J. (dissenting).—I dissent from the conclusion reached by the majority of the court in this case.

Briefly stated, testimony as to the following facts appears in the record. The appellant was a passenger upon one of respondent's trains, making the trip from Portland, Oregon, to Seattle, Washington. The trains of respondent between Portland and Seattle are transferred across the Columbia river upon a large ferry boat. Coming from Portland this boat starts at Goble, on the Oregon side of the river, and lands at Kalama, on the Washington side. Three sets of tracks are arranged upon the boat and, by means of pontoon approaches, the engines and cars of the trains are run upon these tracks and drawn from the boat to the shore in the same manner. The trains are usually separated into sections, which are placed upon the tracks aforesaid. At one end of the boat is a lunch room, which, upon the occasion in question, was toward the Oregon shore. Appellant inquired of some employe upon the train if he would have time to get breakfast in the lunch room. He was informed that he would have sufficient time. The usual time consumed in crossing the river is about twenty minutes. Appellant thereupon left his car, went to the lunch room and ordered some breakfast. He testified that, before he had finished eating, the bell rang, and that the man in charge of the lunch room said: "You better hurry up. The train will pull out and leave you." That he thereupon quit eating immediately, paid for his meal, and walked out; that as he went out the train was moving away, and he

started to catch it; that he jumped on to the step of the last car; that, while holding to the railing, he got one foot on, and stepped up to, the second step, and as he did so the train gave a sudden lurch or jerk, by which he was overbalanced and thrown against a piling, or some timber placed in the boat.

After he was struck he says he does not remember what occurred. Other testimony shows that he was thrown off the boat, and fell upon some timbers resting upon the water below. He was taken up and left at Kalama in charge of a physician. The accident happened on the 13th of January, and he says he did not recover consciousness until the 1st of February following. He testified, that he believed it was his train which he saw moving out; that the person in charge of the restaurant told him it was, and that he had to catch it to go through; that he had no trouble in getting on, but, by the sudden lurch of the train, he was thrown against the timber aforesaid.

It appeared in evidence that the car in which appellant had been riding was not in the section of cars which he saw moving, but it was still standing upon another track on the boat. He testified, however, that he saw no one to give him warning, and that no one did so except the man at the restaurant, who told him his train was leaving and he would have to catch it. Another witness testified that he was an employe of respondent, and that he was at the time stationed upon the boat; that it was his duty to warn passengers against danger, and that he did warn the appellant. From his testimony the warning which he says he gave must have been given as appellant was about in the act of getting upon the steps. He says that after he gave the warning he turned away and did not look further after appellant. It was testified that the

lurch of the train was necessary in its operation at that place, by reason of ascending the incline leading from the boat to the shore. It was also testified that the timber, against which appellant was thrown, was about twenty-six inches from the steps of the car, and that it was a necessary timber for the operation of the boat as constructed. The foregoing is a substantial statement of the material testimony that may be said to relate to the question of negligence on the part of respondent. The court denied the challenge to appellant's evidence, and afterwards submitted the case to the jury, evidently believing at the time that sufficient evidence of negligence had appeared to require its submission. Upon motion for new trial the court, however, concluded that negligence had not been shown.

It may well be said that the conditions surrounding appellant at the time of the accident were not ordinary. It is not usual to transfer trains of cars across streams in the manner described. The method used is doubtless reasonably safe, and no criticism is to be lodged against respondent for adopting such method. But the method required the separation of the cars of the train into sections. These were placed upon different tracks, and were necessarily moved at different times. It was also necessary to pull them up the incline from the boat to the shore, thus involving the application, suddenly or otherwise, of the required power to effect the ascent. It is manifest that, under such circumstances, a high degree of care was required of respondent, both in the construction and operation of its boat, in the movement of its cars, and in guarding its passengers against confusion and danger. If passengers were permitted to leave the cars at all, the duty rested upon respondent to see that they

were warned against danger, and so informed as to train movements that they need not become confused thereby.

No restrictions seem to have been placed upon passengers leaving the cars. The porter of the rear car, called the observation car, testified that the rear platform thereof was surrounded by an inclosed railing, with a gateway opening through it; that he opened the gateway when upon the boat, and that a number of passengers went out upon the boat, and returned to the cars by the same way. He says when the train started he closed this gateway, so that no one could have entered the car from that way afterward. This was the car which appellant attempted to enter, and by way of this platform. Appellant testified that, when he jumped upon the steps, the way to the platform was open so that he could have entered. This fact is in dispute between the porter and appellant. But, be that as it may, it appears in any event that a number of passengers, including appellant, were out of the cars and moving about the boat. Passengers thus permitted upon the boat were under the special care of respondent, and were entitled to reasonable warning of liabilty of danger, and against the probability of confusion by train movements. Appellant says that he received no warning, and saw no one there to give it. This testimony, if true, I think under all the circumstances showed at least some negligence upon respondent's part. It is true, as stated, that a witness for respondent testified that he gave appellant warning, but that made the matter of warning merely a disputed fact, which it was the jury's province to determine.

Again, while it was testified that the upright timber which appellant struck was necessary for the operation of the boat as constructed, yet it became a question whether

its location so near the side of the cars was necessary and proper, in view of the apparently necessary lurching of the train as it passed that point. It has been often held that it is not necessarily negligence *per se* for one to get aboard a slowly moving train, the fact of negligence depending upon the circumstances of each particular case. Respondent was therefore bound to take notice that, in the absence of proper care or warning, passengers might attempt to get aboard slowly moving cars at or about the point in question, and might possibly, by the necessary lurch of the train, be thrown in contact with the timber only twenty-six inches in the clear from the cars. I think all these circumstances, bearing upon the question of respondent's negligence, were at least sufficient to call for their submission to the jury.

It is said in the briefs that the court was mainly influenced in its ruling on the motion for a new trial, by the decision of this court in *Blakney v. Seattle Electric Co.*, 28 Wash. 607, 68 Pac. 1037. The negligence alleged in that case was the sudden lurch of a street car, by which the respondent claimed she was thrown to the ground while in the act of getting off the car. The evidence, uncontradicted in the record, showed that the respondent did not fall at a street crossing, but at a point near the middle of a block, while she was attempting to step off the car. She did not notify the conductor, who was busy collecting fares, that she desired to leave the car, but she went to the rear platform for the purpose of getting off. She admitted that she was preparing to alight when she fell, and claimed that a sudden lurch of the car caused her to fall. She was in the act of getting off while the car was in motion, and at a place where it did not usually stop, without any notice to the operators of the car that

she desired, or was attempting, to do so. Witnesses called
by the respondent herself testified that there was no jerk
of the car; but that the car, already in motion, simply in-
creased its speed while the respondent was in the act of
stepping off about the middle of a block. The court held
that it was not negligence *per se* to increase the speed of
the car, and that it was not negligence to do so when a
passenger was in the act of alighting unless the car com-
pany knew, or by the exercise of reasonable diligence could
have known, of that circumstance.

I do not think that the circumstances of that case are
similar to those in the one at bar. The accident occurred
at a place where the car company could not reasonably
have expected that a passenger would attempt to alight
without notice to that effect. It was at a place where
the car was properly proceeding on its course, and the
company had a right to increase the speed under those
circumstances. In the case at bar, however, the passen-
ger was attempting to board a train at a place where it
was just starting. Other passengers had gone outside of
the cars and returned. The testimony of the porter showed
that this was a common occurrence. Respondent must
have known that those who had been permitted to leave the
cars would expect to return when the train was ready to
move. It must have known that, if it permitted its pas-
sengers to go out upon the boat, the necessary and reason-
able information, warning, and facilities for their safe
and timely return should be provided, and those in ac-
cordance with the peculiar nature of the surroundings
and possibility of attendant danger. Respondent was also
chargeable with knowledge of all the conditions, appli-
ances, and surroundings attending the movement of the
train at that time and place, and the possibility of acci-

dents happening to passengers returning to the cars. It was therefore for the jury to say whether due care was exercised at that time and place, whether there was lack of proper care in placing the timber so near the cars, particularly when the lurch of the train was necessary as it passed that point, and whether these, conspiring together, were the proximate cause of appellant's injury.

"It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law but of fact and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony or because the facts being undisputed fair-minded men will honestly draw different conclusions from them." *Richmond etc. Co. v. Powers,* 149 U. S. 43, 45, 13 Sup. Ct. 748, 37 L. Ed. 642.

See, also, *Lane v. Spokane Falls etc. R. Co.,* 21 Wash. 119, 57 Pac. 367, 46 L. R. A. 153, 75 Am. St. 821. As based particularly upon facts somewhat similar to those here involved, and where the question of negligence was held to be for the jury, see *North Chicago etc. Co. v. Williams,* 140 Ill. 275, 29 N. E. 672; *Anderson v. Railway Co.,* 42 Ore. 505, 71 Pac. 659; *Kulman v. Erie R. Co.,* 65 N. J. L. 241, 47 Atl. 497; 5 Am. & Eng. Enc. Law (2d ed.), 581.

I believe the court's first impression of the evidence in this case was the correct one, within the rules governing the facts which are for the jury. I therefore think the verdict should not have been set aside on the ground that there was no evidence of negligence on respondent's part.

DUNBAR, J., concurs with HADLEY, J.