[No. 5067.    Decided December 30, 1904.]

## In the Matter of the Estate of Paul Drasdo, Deceased.[1]

Administrators and Executors — Allowance to Widow — Right of Widow not Affected by Immoral Life—Will Disowning Wife. The right of a widow, who has been left but one dollar by the testator's will, to have set apart to her the widow's exemptions and an allowance during the settlement of the estate, is not affected by the fact that she visited and associated with prostitutes, where it appears that the deceased met and married her at a house of ill-fame, and associated with and invited her former associates to his home, and she merely pursued the ways he evidently desired her to pursue.

Same—Amount of Allowance to Widow—Reasonableness. An allowance of $250 per month during the settlement of an estate, made to a widow who has been cut off by the testator with a bequest of one dollar, is not excessive where the estate was worth $50,000, producing a monthly income of over $1,500, and there were no minor heirs or direct descendants, nor any creditors.

Appeal by the executors of a will from an order of the superior court for King county, Bell, J., in probate, entered October 28, 1903, setting apart the household goods and personal effects, and making an allowance to the widow during the administration of an estate. Affirmed.

*William Martin* and *W. A. Keene,* for appellants. Construing the statute for a "reasonable" allowance to the widow so as to effect the purpose for which it was enacted, the widow was not entitled to any part of the estate. *Prater v. Prater,* 87 Tenn. 78, 9 S. W. 361; *Richard v. Lazard,* 108 La. 540, 32 South. 559; *Earle v. Earle,* 9 Tex. 630; *Odiorne's Appeal,* 54 Pa. St. 175.

*C. H. Farrell,* for respondent. The widow was entitled to the allowance notwithstanding her acts. *Mowser v. Mowser,* 87 Mo. 437; *Chase v. Webster,* 168 Mass.

[1]Reported in 78 Pac. 1022.

228, 46 N. E. 705; *Walters v. Jordan,* 12 Ired. (N. C.) 170; *In re Diller's Application,* 5 Ohio N. P. 255; *King v. King,* 64 Mo. App. 301; *Zeigler v. Mize,* 132 Ind. 403, 31 N. E. 945; *Griesmer v. Boyer,* 13 Wash. 171, 43 Pac. 17; *Smith v. Smith,* 112 Ga. 351, 37 S. E. 407; *Linares v. De Linares,* 93 Tex. 84, 53 S. W. 579; *In re Gorkow's Estate,* 20 Wash. 563, 56 Pac. 385; *In re Lax Estate* (Cal.), 35 Pac. 341.

FULLERTON, C. J.—This is an appeal from an order in probate. The record discloses that one Paul Drasdo died on the 15th day of June 1903, in King county, this state, leaving an estate therein consisting of personal property of the approximate value of $50,000. The decedent left a will in which he disclaimed having any lawful wife, but provided that in case "any woman should prove to the satisfaction of any court, and establish in any court, by decree or otherwise, that she is, or has ever been," his lawful wife, he bequeathed to her the sum of one dollar. All the residue of his estate was bequeathed to collateral heirs. Dora Marsh Drasdo, claiming to be the widow of the deceased, applied to the court for an order setting apart to her certain personal property, as being exempt from execution, and for an allowance out of the estate for her support pending the settlement of the same. On the hearing the court found that the applicant was the widow of the decedent, having been his lawful wife at the time of his death, and as such was entitled to have set apart to her the household goods, furniture, wearing apparel and peronal effects of her late husband, and also to an allowance of two hundred and fifty dollars per month for her support and maintenance during the progress of the settlement of the estate, and entered an order accordingly. From this order the executors named in the will appeal.

The appellants do not, in this court, seriously contend that the applicant was not the wife of the decedent, Drasdo, at the time of his death, but they contend that, because of her dissolute and immoral acts and character, she has forfeited all rights as his widow, and is not entitled to any of the benefits accruing to her under the law as such.

It was shown, by the testimony of certain persons engaged in hack driving in the city of Seattle, that she had been driven by them, at times by herself, and at other times in company with a man other than her husband, to a house of prostitution in that city, and that once she made the "rounds of the saloons," drinking at the different places she entered; and by her own testimony it was shown that she visited an acquaintance at a house of ill-fame in the city of Chicago, while she was on a trip to the eastern states. But it also appeared that the Chicago house was one that she was an inmate of prior to coming to Seattle, and that the Seattle house was one that she was an inmate of at the time, and from which, the deceased married her. She denied visiting the Seattle house in company with any man other than her husband, and denied that she had ever made the rounds of the saloons. It was also shown that her husband had knowledge of her past life before he married her.

If it be true that conduct on the part of a wife, such as is charged against the respondent, would, in any case, be held sufficient to deprive her of her rights as a widow, we think the rule can have no application in this case. It was not to be expected that the applicant would, after her marriage, entirely sever herself from her old associations. Nor, if we may believe the testimony of the applicant, did the husband expect it. One of her former associates was invited as a witness to the wedding ceremony,

and signed the return filed in the county clerk's office as such witness. The wedding was celebrated by a supper in the house it is now thought improper for the wife to visit, at which celebration the husband spent some five hundred dollars for wine alone. He invited and brought to his house women from this very house on several occasions, and often invited and took its inmates, in company with his wife, to the races, theatre, and other public places. These are not, of course, things that a wife in a virtuous household could submit to and escape with impunity, but this woman is not to be measured by the standard of a woman in a virtuous household. She but continued to be what she was known to be when the decedent married her; her acts were the acts that won her husband, and she but pursued the ways he evidently desired her to pursue. This being true, his legatees cannot cut her off from her rights as a widow by showing that her ways were not the ways of continence and sobriety.

The appellants complain of the allowances made the applicant, claiming that they are excessive. It seems to us however, in view of the circumstances, that they are not so. In making such allowances the court may take into consideration the character and amount of the estate left, and the provision the husband sought to make for the benefit of the widow, as well as her actual necessities. Here the deceased sought to cut his widow off with one dollar. He denied in his will that their very marriage was legal. He left estate of the value of $50,000, which produced an income of over $1,500 per month. There are no minor heirs or direct descendants to inherit the property, nor are there any creditors of the estate. Under these circumstances, we think the allowances are not excessive, and the order appealed from will be affirmed.

HADLEY, MOUNT, ANDERS, and DUNBAR, JJ., concur.