IN RE ESTATE OF GEORGE H. PROUTY.

October Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed January 4, 1933.

*Theriault & Hunt* for the appellants.

*J. W. Redmond* for the petitioner and appellee.

70

POWERS, C. J. George H. Prouty, late of Newport, died testate. He left a widow, Henrietta Prouty, who has deceased, leaving a will in which the appellants are named as beneficiaries. By his will, Gov. Prouty gave his widow a legacy of $15,000, and he gave to his brother, Edgar J. Prouty, the sum of $60,000, in trust; to pay to Henrietta the income thereof during her life, and therein providing that at her decease, the principal should belong to said Edgar J.

Mrs. Prouty made application to the probate court for the district of Orleans, wherein the settlement of the estate is pending, for an allowance from the estate for her support. The application was granted, an allowance was decreed, and from time to time since, other decrees have been made granting allow-

ances for her support. These orders were absolute in form, and, as recorded, do not in any way affect the amount of interest which would accrue on the bequests above referred to.

The executor of the estate, Edgar J. Prouty, has now brought this petition to the probate court aforesaid, therein alleging that two of the allowances above referred to, one dated December 6, 1918, and the other dated June 15, 1920, did not correctly express the decisions actually made by the probate court on the applications under which they were made, and praying that said decrees be corrected so as to express the truth, by inserting therein a provision that the allowances were to be in lieu of the interest on the trust fund. This petition is dated October 31, 1931, and contains no reference in its body or prayer regarding interest on the $15,000 legacy. A hearing was had before Judge Smith of the probate court aforesaid, who heard evidence, found the facts, and thereon rendered a decree granting the prayer of the petition and directing that the order dated June 15, 1920, and another dated May 1, 1925, be corrected as above.

The case comes here on direct appeal and a bill of exceptions duly allowed by the probate court.

We may as well say at this point that the attempt to correct the order last above referred to was wholly unwarranted. It appeared that the probate court, at different times, made four allowances to the widow under G. L. 3282. As we have already seen, only the one of December 6, 1918, and the one dated June 15, 1920, were made the basis of this petition. The evidence taken at the hearing below was limited to these two orders. The order of May 1, 1925, was wholly dehors the record, and appears to have been considered by the court in making the decree through some misunderstanding. Being wholly outside the pleadings and proof, it was error to order its correction in this proceeding. *Cutler Co.* v. *Barber*, 93 Vt. 468, 472, 108 Atl. 400. While the technical rules of pleading are greatly relaxed in probate matters, it is necessary, even in that court, to state your case and claim your remedy; and it would never do to say that one could ask for one thing and be granted another without amendment or proof. The prayer for general relief does not save this part of the decree. Any relief to which the petitioner is entitled on his allegations could be granted, but something entirely outside them, could not be. Nor is the order of May 1, 1925, a part of the same *res* covered

by the allegations. As here presented, the orders made by the probate court were and are separate and distinct. One or more may be subject to amendment and correction, while the others are not.

The order of December 6, 1918, is already out of the' case, for, while it was covered by the petition and proofs, there is no finding concerning it, and the decree below did not cover it. So what follows applies only to the order of June 15, 1920.

The petitioner claims that the appellants have no available exceptions to the admission and exclusion of evidence or to the action of the court in overruling their motion to dismiss, because the transcript, though referred to, is not made a part of the record, except for a particular purpose that does not cover the exceptions above referred to.

█ We agree with the petitioner that unless the transcript is, in some proper way, made a part of the record, it is not before us. *O'Boyle* v. *Parker-Young Co.,* 95 Vt. 58, 63, 112 Atl. 385; *Francis* v. *London G. & A. Co.,* 100 Vt. 425, 429, 138 Atl. 780. We also agree that a mere reference to the transcript is not enough to make it a part of the record, and that an express declaration to that effect is required. *Humbarger* v. *Humbarger,* 72 Kan. 412, 83 Pac. 1095, 115 A. S. R. 204, 205; *Wright* v. *Griffay,* 146 Ill. 394, 34 N. E. 941, 942. But the bill before us contains a further reference to the transcript as follows: "Said transcript is hereby referred to and made a part of this bill of exceptions and shall be controlling as to the evidence for all purposes of this review." While we must construe this language against the appellants, *Higgins, Admr.* v. *Metzger,* 101 Vt. 285, 298, 143 Atl. 394, it is our duty to give it a reasonable construction, *Poulin* v. *Graham,* 102 Vt. 307, 310, 147 Atl. 698; *Goodwin* v. *Gaston,* 103 Vt. 357, 371, 154 Atl. 772. The only reasonable construction of the above-quoted language, we think, makes it mean that the transcript is made a part of the bill for all purposes, but is to control only as to the evidence. And we hold that it is sufficient to enable the appellants to present the questions argued.

██ That a probate court has the inherent power to correct its decrees by a *nunc pro tunc* order so that it will accord with the decision rendered and speak the truth is too firmly established by our cases to be disputed. *In re Hayes' Estate,* 90 Vt. 286, 289, 98 Atl. 45, and cases cited. But there is much good

sense in what the elder Redfield said in *Smith's Heirs* v. *Rix*, 9 Vt. 240, 241, that the court should enter upon a re-examination of the matter with great caution and act only upon the most conclusive evidence. Or to put it in the language of the head-note prepared by the judges: "The court of probate * * * may correct errors in its former decrees * * *. But this should only be done where the errors are * * * proved *beyond all doubt.*" This very case illustrates the wisdom of this rule: Mrs. Prouty, whose interests would be seriously affected by the proposed changes in the record, had passed on before any attempt of this kind had been made or suggested. If the proposed change is made in the order of June 15, 1920, there would be a period of five years or more during which she would be getting nothing from the estate, for the sum named in that order was just equal to what her interest would be. Judge Smith himself, though he may have been disinterested in a legal sense, would be very apt to rely more or less upon his own recollection in making his findings, which recollection could not be tested by cross-examination. All in all, a petition of this kind presents delicate questions of fact which, in fairness, ought to be passed upon by a third party. However, in this case, no suggestion is made that Judge Smith was "incapacitated" within the meaning of G. L. 3190, and we give that question no attention.

The question whether a record shall be corrected is one addressed to the discretion of the court who made it. *St. Pierre* v. *Beauregard*, 103 Vt. 258, 261, 152 Atl. 914. But the question whether a certain amendment can be made is one of law and is reviewable by this Court. *Jaffrey* v. *Smith*, 76 N. H. 168, 80 Atl. 504, 509.

This power of amendment can never be used to rectify judicial error or omission. Under the guise of correction, a court is powerless to add to its judgment a term not originally included in it, though it might have been or even should have been so included. A court cannot in this way cure its own lapses. Note to *National Council, etc.* v. *Silver*, 10 A. L. R. 523, 554. Whatever was actually adjudged may be embodied in the entry by a *nunc pro tunc* order. But that is as far as the corrective power of the court goes. The points adjudged are the vital things; the entry is merely the official evidence of them. The things adjudicated may not be amended; the record,

if faulty, may be. *Bean* v. *Ayers,* 70 Me. 421; *In re Munro's Estate,* 15 Abb. Pr. (N. Y.) 363; *Liddell* v. *Landau,* 87 Ark. 438, 112 S. W. 1085.

At common law, even clerical mistakes or misprisions could be corrected only where the record furnished the means of correction. 15 R. C. L.; note 10 A. L. R. 628 *et seq.* Some courts adhere to this rule. Others deviate from it far enough to admit for consideration notes and memoranda, not themselves a part of the record. Still others throw open the door to the consideration of any legitimate evidence though it be wholly outside the record. See note last cited, and note Ann. Cas. 1913E 349. Many cases indicate that the recollection of the presiding judge, alone, does not afford a sufficient basis for correcting the record. While the practice in this State is not very clearly defined, we think the liberal rule last stated is indicated by our cases, and that any legitimate evidence may be admitted to prove the facts, which evidence may include the recollection of the court who made the judgment order. In *Little* v. *Cook,* 1 Aikens, 363, 365, 15 A. D. 698, it was said regarding an erroneous entry that the court from its own knowledge or satisfactory affidavits ought to ascertain the facts and order the entry corrected. In *Mosseaux* v. *Brigham,* 19 Vt. 457, 460, it is said that a court of general jurisdiction may by direct inquiry ascertain the faults in its records, and usually proceeds on motion founded on affidavits and notice. In *State* v. *Drown,* 86 Vt. 233, 81 Atl. 641, there was a finding of facts on evidence taken. In *Levin* v. *Peck,* 88 Vt. 507, 509, 93 Atl. 256, the court inquired into the facts relating to the recognizance in question, allowed the petition for amendment of the record to be filed, and granted it. *In re Hayes' Estate,* 90 Vt. 286, 289, 98 Atl. 45, which was a petition to vacate a decree, it was held that the probate court had undoubted jurisdiction of the petition and the power to hear evidence on notice, and to vacate and amend its former decree. We hold, then, that the court here proceeded properly when it heard evidence and filed its findings of fact.

The court found, in effect, that the order of June 15, 1920, as recorded in the probate office did not correctly recite the order that was actually made by the court, and that in order to correspond to the order actually made it should be so corrected as to provide that the sum allowed to the widow should be in lieu of the interest which the law would give her on the sums given

to and set apart for her by the will. By an order dated January 19, 1932, the original order was so corrected. We have paraphrased the language of the finding somewhat, but it reasonably amounts to what we have written. The probate court, of course, had no power to stop the running of interest on the sums referred to by a direct order to that effect. It could, however, tender to Mrs. Prouty a choice between the interest and an allowance under the statute. In fixing upon a sum which in the circumstances would be reasonable, the court could properly take into consideration the provisions made for her in the will, *In re Drasdo,* 36 Wash. 478, 78 Pac. 1022, the circumstances of the estate, and the circumstances of the widow. If the court should decide that Mrs. Prouty's interest was sufficient for her requirements, and that an allowance in addition thereto would not be reasonable, it could and should refuse to award her anything from the estate. So it might make a conditional award, and if the widow should deliberately accept the allowance so conditioned, she would be bound by the condition. And her acceptance would be equally binding upon her legatees, who could only take what she, at her decease, had to give. They are not "third parties" within the meaning of the law governing the correction of records, but privies who stand in Mrs. Prouty's shoes. An heir takes property just as his ancestor held it— subject to such conditions, equities, encumbrances, and estoppels as were binding on him. *Cross* v. *Allen,* 141 U. S. 528, 12 Sup. Ct. 67, 35 L. ed. 843; 9 R. C. L. 87. A will speaks as of the death of the testator, and the legatees can take only what can then be left for them after giving effect to liens, contracts, and waivers made by the testator.

This brings us to a consideration of the question of the sufficiency of the evidence to support the findings that the original order did not correctly reflect the judgment, and how it should be corrected.

The record shows that these findings were predicated wholly on the evidence taken at the hearing, and not at all on the recollection of Judge Smith; for, though he reports that his recollection coincides with the findings, he expressly says that "from the evidence at the hearing" he makes those findings. The evidence at the hearing consisted only of (1) the testimony of Edgar J. Prouty; (2) the letter written by Judge Smith to Hon. John G. Sargent, counsel for Mrs. Prouty, dated November 26,

1919; (3) Gen. Sargent's reply thereto, dated December 7, 1919; (4) Gen. Sargent's letter to Geo L. Hunt, counsel for the appellants, dated December 11, 1931. All these letters were by agreement treated as evidence.

All that Mr. Prouty testified to was that he understood, from what was said at the time the order was made, that the allowance to the widow was to be in lieu of interest on the trust fund. He said nothing about interest on the $15,000. It did not appear from his testimony or otherwise what was in fact said or who in fact said it. All there was in the letter to Gen. Sargent that has any tendency to show that Judge Smith was intending to make the widow's allowance conditional is the following: ''I want to give the widow the benefit of the doubt and I feel that she is entitled to be considered before the other legatees but I do not feel that she should be considered before the creditors. I think that if the estate is perfectly solvent that the widow ought to at least have six per cent. interest on the amount she would be decreed provided the estate was settled within the year and as I figure it that would give her $375 a month and as I figure it that would make about $13,000 a year that the executor would have to pay in interest and the widow's allowance and that looks large to me. To sum up what I am trying to get at I feel that it is my duty to be sure that the creditors of this estate are to be taken care of first and if there is no question about that then I think Mrs. Prouty should have an allowance if this estate is going to be dragged along four or five years and that the allowance be at least the legal rate of interest on what she should receive.'' This letter was written about seven months before the order of June 15, 1920—the only one left in the case—was made. There is nothing in Gen. Sargent's reply that throws any light whatever on the question at issue. But in his letter to Mr. Hunt, he expressly denies that it was ever suggested in his hearing that the sums allowed to Mrs. Prouty were to have any effect or bearing on what would be her rights under the will.

It is enough here to say that the foregoing evidence was wholly insufficient to sustain the findings above referred to. It utterly fails to measure up to the requirements of Judge Redfield's rule hereinbefore referred to, and it does not amount to that ''clear, competent, and convincing'' evidence which is required by the authorities. *Jones* v. *Gallagher,* 64 Okla. 41, 166

Pac. 204, 10 A. L. R. 518, 522, and note 526, 625; note 67 A. L. R. 828, 849.

   *Decree reversed, order vacated, and cause remanded to the probate court. Let the petitioner there apply if he be so advised. Let this result be certified to that court.*