WILLIAM HAYS, Respondent, v. THE WABASH RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 5, 1892.

1. Practice, Trial: RAILROADS: DEMURRER TO EVIDENCE, WHEN: TIME FOR PASSENGERS TO ALIGHT. Where the defendant's evidence establishes a fact—in this case that the caboose of a freight train stopped at the platform and remained a time ample for passengers to get off and on—which defeats plaintiff's right to recover, and there is nothing in plaintiff's testimony tending to contradict such fact, a demurrer to plaintiff's case should be sustained.

2. Carriers: PASSENGERS ON FREIGHT TRAIN: STOPPING AT PLATFORM. A freight train carrying passengers should stop its caboose reasonably near the platform, regard being had to the surroundings, situation and location, and where it was stopped one hundred and twenty to one hundred and fifty feet from the platform at noon time with a clear unobstructed smooth pathway leading thereto, and plaintiff accepts the same without protest, it would seem sufficient.

3. ———: ———: TIME TO REACH CABOOSE. Where announcement was made that the caboose would not stop at the platform sufficient time for passengers thereon to reach the caboose and board it before the train started, a passenger who waited for the caboose to come up, and in attempting to board it while passing. was injured, cannot recover therefor, even though he did not hear the announcement by reason of his preoccupation.

*Appeal from the Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

*F. U. Lehman* and *Geo. S. Grover,* for appellant.

(1)  The verdict is so opposed to the overwhelming preponderance of the testimony as necessarily to imply partiality and prejudice on the part of the jury. *Empey v. Cable Co.,* 45 Mo. App. 422; *Baker v. Stonebraker,* 36 Mo. 338; *Whitsett v. Ransom,* 79 Mo. 258; *Spohn v. Railroad,* 87 Mo. 74; *Garrett v. Greenwell,* 92 Mo. 120.  (2)  The verdict is in contravention of the instructions given by the court.  *Rafferty v. Railroad,* 15 Mo. App. 559; *Way v. Railroad,* 73 Iowa, 463. (3)  The demurrer to the evidence should have been sustained.  Thompson on Carriers of Passengers, 229, 235; *Murch v. Railroad,* 29 N. H. 9; *McGee v. Railroad,* 92 Mo. 208; *Wagner v. Railroad,* 97 Mo. 512; *Warren v. Railroad,* 37 Kan. 408.

*T. H. Harvey* and *Tyson S. Dines,* for respondent.

(1)  The relation of passenger begins not from the time of entering the vehicle, but from the time of the entry of the individual, with intention of being carried, upon the premises furnished by the carrier.  Shearman & Redfield on the Law of Negligence [4 Ed.] sec. 490, p. 306; sec. 509, p. 337; *Foy v. Railroad,* 18 C. B. (N. S.) 225; Hutchinson on Carriers [2 Ed.] secs. 612, 617; *Railroad v. Butler,* 112 Ind. 598; *Railroad v. Buck,* 96 Ind. 346.  (2)  Unless a custom to the contrary had been established, plaintiff had the right to expect that the passenger caboose would stop at the usual and customary stopping place.  Hutchinson on Carriers, secs. 612, 617; *Railroad v. Butler,* 112 Ind. 598; *Railroad v. Buck,* 96 Ind. 346.  And especially so, as the evidence shows that this passenger carrying freight did usually stop its caboose at the platform. (3)  To say that the law required plaintiff, before the

switching was done, and before the train for Carrollton
was made up, contrary to custom, to go out several
hundred feet into the yard to seek a caboose, exposing
himself to danger of being killed by moving cars, and
having found the caboose to sit in it over half an hour
and be bumped about upon the sidetracks, is absurd.
The proper and safe place for him was the depot and
depot platform, provided for that purpose, at which he
knew the cabooses customarily stopped.   Before appel-
lant can avail itself of this as a defense, it must show that
a separate place had been chosen and customarily used
for getting on and off passenger cabooses.   *Railroad v.
Butler*, 112 Ind. 598; *Railroad v. Whitfield*, 44 Miss.
466; *McGee v. Railroad*, 92 Mo. 220.   (4)   Assuming
that defendant was a common carrier of passengers, and
that it was guilty of slight neglect, which is the absence
of the extraordinary care required of common carriers
of passengers, was plaintiff guilty of such contributory
negligence as barred his recovery?   This was a question
for the jury.   *Straus v. Railroad*, 75 Mo. 185; Hutch-
inson on Carriers, sec. 612; *Huselkamp v. Railroad*,
37 Mo. 538; *Doss v. Railroad*, 59 Mo. 27; *Sergert v.
Railroad*, 75 Mo. 475; *Clotworthy v. Railroad*, 80 Mo.
220; *Leslie v. Railroad*, 88 Mo. 50; *Taylor v. Railroad*,
26 Mo. App. 336; *Jackson v. Railroad*, 29 Mo. App.
495; *Kelly v. Railroad*, 70 Mo. 604; *Murphy v. Rail-
road*, 43 Mo. App. 342; *Johnson v. Railroad*, 70 Pa.
St. 364.   (5)   The triers of fact who see the witnesses,
face to face, are the sole judges of their credibility, and
their finding will not be disturbed when there is evi-
dence to support it.   *Hucksold v. Railroad*, 90 Mo.
548; *Gregory v. Wabash*, 46 Mo. App. 574; *Townsend
v. Gates*, 25 Mo. App. 336; *Jones v. Barry*, 37 Mo.
App. 125; *Welch v. Railroad*, 20 Mo. App. 358;
*Matthews v. Railroad*, 26 Mo. App. 76.   (6)   The
instructions go further than the law in appellant's

favor. It is contended that the instructions, under the evidence in this case, might have required the caboose, after the sale of the ticket and after the making up of the Carrollton train, to stop at the platform. The court modified them by saying, "or some place reasonably near thereto." *Adams v. Railroad,* 100 Mo. 555; *Bryan v. Railroad,* 32 Mo. App. 228; Shearman & Redfield on Law of Negligence [4 Ed.] p. 306, sec. 509, p. 337; *Allender v. Railroad,* 37 Iowa, 272; *Railroad v. Whitfield,* 44 Miss. 466; *Foy v. Railroad,* 18 C. B. (N. S.) 225; Hutchinson on Carriers, sec. 612; *Railroad v. Butler,* 112 Ind. 598. (7) The demurrer to the evidence was properly overruled. It not only admitted the truth of the testimony, but of every inference that could have reasonably been drawn therefrom. *Straus v. Railroad,* 75 Mo. 185; *Swigert v. Railroad,* 75 Mo. 475; *Jackson v. Ins. Co.,* 27 Mo. App. 62; *Hucksold v. Railroad,* 90 Mo. 548; *Twister v. Stork,* 30 Mo. App. 163; *Twohey v. Fruin,* 96 Mo. 104; *Taylor v. Short,* 38 Mo. App. 21. (8) A railroad may, if it chooses, make a different rule for the stoppage of its passenger coaches and passenger cabooses; but, where it has made none, the law is that the caboose must stop at the customary platforms erected for that purpose. *Whitehead v. Railroad,* 99 Mo. 263; *Jones v. Railroad,* 17 Mo. App. 158. We particularly call the attention of the court to the distinction between the case at bar and those cited in appellant's brief, as shown in *Railroad v. Butler,* 112 Ind. 598.

ELLISON, J.—Plaintiff was injured in attempting to get aboard a caboose attached to the rear end of a moving freight train as it was passing the depot platform at the town of Dewitt, on defendant's road. In making the attempt, he missed his hold, and fell. He brought this action for damages and recovered in the

trial court.   The testimony on plaintiff's part as to the accident and its cause is almost wholly composed of plaintiff's own statement as a witness.   It was contradicted in its material parts by the trainmen, and by several disinterested witnesses who were in a position to know whereof they spoke.   Looking, however, alone to the testimony for plaintiff we find that he took passage on defendant's freight train at Brunswick for Carrollton, a point on defendant's road west of Brunswick, by boarding the caboose and paying cash fare as far as Dewitt (the place where he received his injury), and there getting a ticket of the agent at the depot for Carrollton.   On arriving at Dewitt the train stopped at the depot platform, but leaving the caboose, in which he and some other passengers were seated, among whom he noticed Miss Barrett, about one hundred and fifty feet east of the platform; that he got out at this point leaving Miss Barrett in the car and walked along a plain, level and smooth path to the depot, going into the ticket office and getting a ticket from the agent in discharge of a debt the agent owed him.   His claim. against the agent being five cents more than the price of the ticket, the agent gave him a "nickel" with the ticket; that he remained in the ticket office about five minutes and then went out on the platform and engaged in social conversation with a Mr. Barrett for near fifteen minutes and until the train commenced to move; when the train began to move some one said it would not stop and he began to go towards the east end of the platform to meet the caboose, and when it came by him, going at the rate of three or four miles an hour, he attempted to get on, but, missing his step or hold, he fell and was injured by the car crushing his foot; that the conductor was on the platform, and did not say to him individually that passengers should go to the caboose and get on, as the train would not stop after

starting, and he did not hear the conductor make such announcement generally; that he "was watching the caboose more than the conductor, and was talking with Mr. Barrett, so if the conductor said that he did not hear him." He also says: "Don't think Mr. Barrett told me to get on; that they would not stop the caboose again at the platform."

From plaintiff's own testimony, excluding what it contains of a negative character, we may concede that he made a case for himself. The case is this: That the caboose was standing about one hundred and fifty feet east of the platform; that he purchased a ticket entitling him to passage on that train from Dewitt to Carrollton and he then waited on the platform expecting the caboose to be pulled up opposite to the platform, and stopped a sufficient length of time to afford him opportunity to get aboard; that when he discovered that the caboose would not be stopped at the platform he attempted to get aboard, while it was moving slowly rather than to be left. In conceding that this testimony made out a case for plaintiff we mean it as a concession for the purpose of a discussion of this case and not a decision; for when one takes passage on a freight train he ought not to expect the same conveniences as when on a regular passenger train, though he must be treated and respected as a passenger by the carrier receiving him as a passenger. *Murch v. Railroad*, 29 N. H. 9; Thompson on Carriers of Passengers, 235. It is assumed that he will uncomplainingly put up with the inconveniences which reasonably follow such mode of travel. *Whitehead v. Railroad*, 99 Mo. 263; *McGee v. Railroad*, 92 Mo. 208. In this instance the caboose, as plaintiff and I believe all the other witnesses state, stood at noon time in front of the hotel about one hundred and fifty feet east of the depot for at least fifteen minutes, and that between the caboose and the

depot was a *plain, level, smooth and safe* pathway leading up to the depot. So, in conceding to plaintiff that the caboose should have been pulled up and stopped at the platform, we do not decide for or against the proposition that defendant discharged its full duty to arriving and departing passengers by stopping the caboose at the point opposite the hotel.

But when we consider what appears in plaintiff's testimony of a negative character, and compare it with what is shown in the testimony of the other disinterested witnesses it leaves the judgment without support. He says that the caboose was stopped opposite the hotel about one hundred and fifty feet east of the platform when the train first entered Dewitt, and that he got out of the caboose at that point and immediately went up to the ticket office, got his ticket and remained five minutes inside the waiting room. He says he left Miss Barrett, a passenger for Dewitt, in the caboose when he got out; that he did not see her when she got out. She says that the caboose was pulled up to the platform, and that she got out *on the platform*. Witness Tennison was a departing passenger, and was at the depot. He states that the caboose was at the platform and that he got on at the platform, and that the car was then backed down opposite to the hotel. Witness Sensible was a passenger who had gotten on the train at Brunswick, and was going beyond Dewitt to Wakenda. He says that the caboose was stopped at the platform, and that he got out of the car onto the platform. Witnesses Booth and Winfrey also state that the caboose was stopped at the platform, and all these witnesses say that it was then backed down to the hotel. They are all disinterested parties. Added to these is the testimony to the same point of all the train force, including the station agent.

Plaintiff and two witnesses are all that testify in his behalf, except medical testimony as to the character and extent of his injury, and neither of these states that the caboose was not stopped at the platform. Plaintiff himself says that *after* he bought his ticket it did not stop at the platform, and that *"when I came out* with my ticket the caboose was standing down at the hotel.*"* *He had been in the waiting room five minutes.* He stated further that he *"*never *saw* the caboose stop in front of the *depot."* The two other witnesses knew nothing about whether the caboose had been at the platform, as they did not see the train until it had been in, perhaps, fifteen minutes. When we consider that (as plaintiff states) the platform was one hundred and twenty-five or one hundred and fifty feet long, and that (according to plaintiff's witness Barrett) sixty feet of this was east of the depot, towards the hotel, and that the trainmen were loading and unloading freight at the depot, perhaps from different cars, thus making it necessary to move them (though this does not appear), we can readily see that the caboose could have been pulled up to the east end of the platform, and remain a time ample for passengers to get off and on, and yet plaintiff not see it by reason of being five minutes in the waiting room with the agent. When it is further considered that arriving and departing passengers testify that they got off and on at the platform, and that others saw the car at the platform, we find nothing in plaintiff's testimony to contradict this, and nothing which can be said to raise a reasonable inference against it. We must accept it then as a fact; we are *bound* to accept it as a fact in the case that the caboose was at the platform a sufficient length of time to allow passengers to get off and on, and that passengers did so. This being true, defendant discharged its full duty in the premises, and has not been guilty of negligence, and the demurrer to

testimony interposed by counsel should have been sustained.

There is another phase of plaintiff's case which, it seems, should have worked its destruction. His first instruction, recognizing that he was traveling in a freight train, bases his right to recover on the hypothesis that the caboose was not stopped at the platform, or at a point reasonably near thereto. What point would be reasonably near would, of course, depend on circumstances—the surroundings, situation and location. In this case there was a clear, unobstructed, smooth pathway from where the caboose stopped to the end of the platform, a distance of between one hundred and twenty and one hundred and fifty feet—a half minute's walk. Plaintiff accepted this point as being near and convenient enough for his purposes; for he left the car at the point without question or protest.

When we come to defendant's case, as presented by its instructions, plaintiff, palpably, has no foundation upon which to rest his judgment. By the first instruction the jury are told that if the conductor announced to the people on the platform that the caboose would not again be brought to a stop at the platform, he had a right to assume that plaintiff heard him, and if plaintiff had time then to go to the caboose, though it was in front of the hotel, but did not do so and remained upon the platform, talking to other persons, until the train started up, he could not recover. There was no question at all but that plaintiff had abundance of time to go to the car after the announcement was made, if it was made. That it was made, was shown by several witnesses besides the train force. It was not disputed by anyone. Plaintiff says nothing was said to him individually, but, as to whether the announcement was made generally, he only says he did not hear it. His language was: "I was watching the

caboose more than the conductor, and was talking with Mr. Barrett, so if the conductor said that, I did not hear him." So, his attention being otherwise directed causes his statement to be without force as against the positive and affirmative testimony as to the fact, as disclosed by other witnesses.

So, the verdict is in the face of defendant's second instruction, where the jury was told that if the caboose was stopped reasonably near to the depot and remained there a sufficient time for plaintiff to go to the ticket office for his ticket and return thereto, and that plaintiff did go to the ticket office and procure his ticket, he had no right to assume, without inquiry, that the caboose would be pulled up and stopped at the platform, and that, therefore, if he, instead of returning to the caboose, remained on the platform, talking to others, until the train started, he could not recover.

There is no doubt or question as to the facts hypothetically put in this instruction, and the jury should have responded thereto, by finding a verdict for defendant as therein directed.

The case has been well presented by the respective counsel, and we refer to their briefs for authorities cited in support of the theories which were advanced at the argument. The judgment will be reversed. All concur.