FROHRIEP *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

1. RAILROADS — PASSENGER ON FREIGHT TRAIN — ASSUMPTION OF RISK.

   One who takes passage on a freight train assumes the risk of injury from such jarring and jolting as is incident to the ordinary operation of such a train.

2. SAME—NEGLIGENCE—EVIDENCE.

   Plaintiff sued for injuries alleged to have been received by being thrown from a bunk in a freight caboose while the cars were being coupled. The only testimony as to the manner of the accident was that given by himself; and he testified that he was lying in the bunk, half asleep, when he suddenly found himself on the floor of the car, and then heard the clatter of the cars bumping together. *Held,* insufficient to warrant an inference of negligence in the management of the train.

Error to St. Joseph; Yaple, J.   Submitted June 5, 1902.   (Docket No. 22.)   Decided September 30, 1902.

Case by John Frohriep against the Lake Shore & Michigan Southern Railway Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Dallas Boudeman*, for appellant.

*Howard, Roos & Howard* and *Charles A. Sturges*, for appellee.

Montgomery, J.   This is an action in which the plaintiff recovered for personal injuries received while riding in a caboose attached to a freight train of the defendant. The plaintiff shipped over defendant's road a car load of stock, and, as is customary, accompanied the freight train to look after the stock.   The injury which the plaintiff suffered occurred at the city of Hillsdale, while the trainmen were coupling cars in the yard.   There is no evidence, aside from the plaintiff's, which tends in any way to show that what occurred in the way of coupling cars was in any way unusual, or that any unusual jar or jolt was occasioned by coupling.   The plaintiff's testimony upon this subject we quote at considerable length:

"I got on board the train—took the caboose—between 4 and 5 o'clock in the afternoon.   Reached Hillsdale about midnight.   There were no passengers in the caboose at that time besides myself.   Hillsdale is a great business point, with different branches running in 'there,—junction point.   There are a great many side tracks.   When we reached Hillsdale, I laid down on what we call the 'bunk' in the caboose.   Those bunks are lengthwise in the caboose. It is a bench on each side of the car, about 18 or 20 inches wide.   I was on the north side in the east part of the car. When I reached Hillsdale, I was lying down on this bunk, and I was partly asleep when I came into Hillsdale.   The first thing I knew there came a crash that threw me endways of the car, and I bounded back, and I fell with the left knee on the floor, and also the left edge of my hip on

a bunkboard. I don't know whether I got up right away, but I got up, and I was there alone on the seat again. Shortly after I was on the seat, I heard another rattle of the train taking up the slack, and when I heard the clatter I braced myself to protect myself, and didn't fall the second time."

On cross-examination:

"I laid down when we left Coldwater, and I was asleep when we reached Hillsdale. I wasn't awake just before that, and had any conversation with the men in the car. At Coldwater I got a cigar, came back, and smoked it, and took a little lunch, and then laid down. After leaving Coldwater, I waked up in Hillsdale yard, when this accident occurred.

" *Q.* You mean when this bumping of the cars, as you suppose, took place?

" *A.* Yes, sir.

" *Q.* You didn't wake up before that?

" *A.* I don't remember that I was awake. I wasn't sound asleep at all. I laid on the north side of the car, towards the east end. At Hillsdale the train faces east. I should think I was about five or six feet from the end of the car. I laid far enough towards the end of the car so that the door swung clear. The bunk extended all the way to the end of the car. The stove wasn't in that end, but about the middle of the car. I didn't see any table in that end of the car. My feet rested towards the west as I lay there, and my head towards the east of the car,—the way the train was moving. Don't know how long we were at Hillsdale. I didn't get out while there. It was quite a while after I heard this bumping against the car while I was there before the train started on. They had to do some more switching and work, and I heard some more clattering and coupling of cars.

" *Q.* As the car was pushed back, as you supposed it was, against the caboose, you say that you were thrown on the floor?

" *A.* I was thrown endways, and came back when the shock came to me.

" *Q.* You were thrown endways?

" *A.* Yes, sir.

" *Q.* Then you mean you were thrown under the seat?

" *A.* I was thrown endwise, and bounded back and came on the floor.

" *Q.* If you were lying on the east side, you would be pushed towards the end of the car?

"*A.* Yes, sir.

" *Q.* Is that the way it was?

"*A.* I couldn't tell exactly; I was partly asleep. I fell with great force on the floor. I was not awake nor sound asleep; I was in between.

" *Q.* The first you knew about it, you were on the floor?

"*A.* Yes, sir.

" *Q.* So that what occurred before that you don't know?

"*A.* No, sir.

" *Q.* And whether you were shoved along on the seat or not, or anything of that character, you cannot tell?

"*A.* I couldn't say exactly.

" *Q.* The first you knew, then, you were on the floor?

"*A.* Yes, sir.

" *Q.* Of course, that being so, the car had already struck before you knew of it?

"*A.* It did.

" *Q.* You didn't hear it strike, did you?

"*A.* When I fell I heard the clatter and the rumpus.

" *Q.* You didn't hear the car strike against the caboose until after you were on the floor?

"*A.* Why, no.

" *Q.* So far as the car that struck your caboose was concerned, you didn't hear it?

"*A.* Yes, sir. I wasn't sound asleep when I was on the floor. It took quite a little time before the sound of the racket got away.

" *Q.* Let me get this clear. The first, or, as I understand you to say, the first you knew anything about the accident, you found yourself on the floor?

"*A.* Yes, sir.

" *Q.* Then you hadn't heard anything before that, had you?

"*A.* No, sir.

" *Q.* And you couldn't hear the car strike the caboose after the time that you were on the floor?

"*A.* No, sir; I don't claim I did.

" *Q.* And just how the accident occurred, or how the bunting occurred, you don't know anything about it, of your own knowledge?

"*A.* I know the crash came in making up the train.

" *Q.* I am asking you about the shock of the car against the caboose. You don't know anything about that, because you were asleep?

"*A.* I was partly asleep; yes, sir.

"*Q.* And you didn't hear the car when it struck the caboose?

"*A.* No, sir. * * * The seat I was on was on the north side of the car, and I was five or six feet from the end of the car. I don't know whether the seat ran clear to the end of the car or not. Don't know whether I was right at the end of the seat or not. When I found myself on the floor, I was right opposite where I had been lying down on the side, and right close to the seat. The seat was about 10 inches from the floor, I should judge. When I first woke, I was lying on my left side. I was lying on my left side when I was on the seat.

"*Q.* And when you were shoved or slipped off of the seat you lay on your left side?

"*A.* I came down on my left side. I should think the fall was about 18 inches, but I couldn't state how far I had been lifted off of the seat; that I couldn't state.

"*Q.* You can't swear that you were thrown at all?

"*A.* I couldn't swear; I couldn't state one way or the other.

"*Q.* All you can say is, whatever the bumping was, you rolled off the seat on the floor?

"*A.* I don't know whether I rolled off. I came with force down on the floor.

"*Q.* And you don't know what caused you to roll off or slip off?

"*A.* It was because of the crash of the car that threw me.

"*Q.* I understand you to say that when the car bumped against the caboose you rolled off or slipped off of that seat?

"*A.* I did not slip off of my own accord.

"*Q.* You don't know whether you rolled off or slipped off of that seat on the floor?

"*A.* I know I went on the floor somehow.

"*Q.* You don't know how it came about that you slipped off or rolled off of that seat onto the floor?

"*A.* I went off when the crash came, and I heard the clatter of the cars. The car wasn't standing still when I laid on the floor.

"*Q.* You didn't hear anything until you found yourself on the floor, or until after you struck the floor?

"*A.* I didn't hear the first strike of it, because it takes a little time; but the car was in motion when I picked myself up. * * *

"*Q.* Do you mean to swear that you heard the first shock?

"*A.* I don't want to say that I heard the first car that was moved.

"*Q.* That is what I am asking you,—the first car that struck the caboose you didn't hear?

"*A.* I don't claim that I did.

"*Q.* Did you?

"*A.* I heard the clatter from the collision from this crash.

"*Q.* Will you confine yourself to this one question? I understood you to testify that you did not hear the car that first struck the caboose which you were in. Am I right about that?

"*A.* You are trying to make me say that I didn't hear the clattering at all.

"*Q.* No, I am not.

"*A.* I told you I did not hear the first clatter; I heard the clatter when I laid on the floor.

"*Q.* What clatter did you hear when you laid on the floor?

"*A.* I heard the clatter from the drawbars.

"*Q.* You have often heard freight cars bumping together?

"*A.* Yes, sir; sure.

"*Q.* What you heard was this: You didn't hear the first car when it struck your caboose, but after it struck your car, as is very often the case, as they were bumping against the others?

"*A.* Yes, sir; I heard such a motion. .

"*Q.* The clatter you heard on the floor was the bumping of the other cars in the train, and not the bumping of the car against your particular car?

"*A.* I said I didn't hear the first bumping."

The question presented is whether it is open to any just inference to be drawn by the jury that there was any mismanagement of defendant's train. We think not. It is very manifest from this testimony that the plaintiff was lying on this bunk, consisting of a narrow seat at the side of the caboose, with nothing whatever to prevent his falling off or being jolted off by any slight jar, and that the first warning he had was when he found himself on the floor of the caboose, having been jolted or shaken from his

precarious position. To say that this is evidence of any fault on the part of the defendant railway in the management of its train would be to permit the verdict to rest upon mere surmise. In saying this we consider the rule that those who take passage on freight trains are held in law to assume the risk of ordinary jarring, jolting, and jerking incident to the making up and distributing of such trains. This we held in *Moore* v. *Railroad Co.*, 115 Mich. 103 (72 N. W. 1112). See, also, 3 Thomp. Comm. Law Negl. § 2903. We should add that the medical testimony introduced by the plaintiff himself shows that the injuries which he suffered might have been occasioned by his rolling off this narrow seat onto the floor of the car. The request that a verdict be directed for defendant should have been granted.

The judgment will be reversed, and a new trial ordered.

HOOKER, C. J., and MOORE, J., concurred with MONTGOMERY, J.

GRANT, J. I concur in the opinion. and think no new trial should be granted.