## St. Louis & S. F. Ry. Co. v. Gosnell

No. 2206, Okla. T.    Opinion Filed May 12, 1909.

(101 Pac. 1126.)

1.    CARRIERS—Carriage of Passengers—Freight Trains.    Where a railroad company carries passengers for hire on its freight trains, it must exercise the same degree of care as is required in the operation of its regular passenger trains; the difference only being that the passenger submits himself to the inconvenience and danger necessarily attending that mode of conveyance.

2.    SAME—Negligence.    Plaintiff took passage for hire on defendant's freight train from S. to L., and took a seat in the "caboose." Just before reaching 'C., an intermediate station, the engine stopped at a water tank about 150 yards from the depot, when plaintiff, thinking it had reached the station, stepped out on the rear platform to talk to a friend seated on the car steps. Finding it had not reached the station, plaintiff, when the train started again, stepped back in the "caboose" on the way to his seat, and turned and was standing with his hands against the casings of the rear door when the train suddenly stopped at the depot with such jar that he was knocked off his feet and injured. Held, that from these facts no inference of negligence on the part of the railroad company could be legitimately drawn, and that a motion to direct a verdict for defendant should have been sustained.

(Syllabus by the Court.)

*Error from District Court, Comanche County; F. E. Gillette, Judge.*

Action by S. N. Gosnell against the St. Louis & San Francisco Railway Company.    Judgment for plaintiff, and defendant brings error.    Reversed and remanded.

*Flynn & Ames* and *R. A. Kleinschmidt,* for plaintiff in error, cited:    *Wallace v. W. N. C. R. R. Co.,* 98 N. C. 494, 4 S. E. 503; *Harris v. R. R. C.* (Mo.) 1 S. W. 325; *Olds v. R. R. Co.* (Mass.) 51 N. E. 450; *Parluchek v. Wabash R. R. Co.* (Mo.) 74 S. W. 368; *A., T. & S. F. v. Lindley* (Kan.) 22 Pac. 703; *Erwin v. R. R. Co.* (Mo.) 68 S. W. 88.

*McElhoes & Ferris* and *Ahren & McDaniels,* for defendant in error.

TURNER, J. On April 28, 1904, S. N. Gosnell, defendant in error, plaintiff below, sued the St. Louis & San Francisco Railway Company, plaintiff in error, defendant below, in the district court of Comanche county in damages for personal injuries alleged in his amended petition to have been by him sustained on or about August 21, 1903, on which date he says he became a passenger for hire on defendant's railway from the town of Snyder to the town of Lawton, in this state; that as such he took passage on one of defendant's regular freight trains with "caboose" attached, which, upon its arrival at the town of Cache, "was stopped by defendant negligently and wilfully and with a sudden and terrific jar and with such force, violence, wantonness, and negligence on the part of defendant that plaintiff without any fault on his part was thrown violently and forcibly against a box," and seriously injured, for which he prayed judgment for $5,000. For answer defendant pleaded a general denial, a specific denial of negligence, and contributory negligence. There was trial to a jury which resulted in a judgment for plaintiff for $750, to reverse which, after motion for a new trial filed and overruled, defendant brings proceedings in error to this court. At the close of the testimony on both sides defendant moved the court to direct a verdict for defendant, which was overruled, and this is assigned as error.

There is no material conflict in the testimony. The evidence discloses that plaintiff, aged 51 years, lived at Frederick; that, while on his way to Lawton, he took passage for hire on defendant's freight train at Snyder, and, with several others, took seats in the "caboose" attached to the rear end; that said train consisted of 14 cars 35 feet long in addition to an engine and tender; that just before reaching Cache, an intermediate station, and after the train had passed into the switches, the engine stopped at a water tank about 150 yards from the depot; that plaintiff, who was seated looking out the open back door of the caboose, thinking the train had reached the station, stepped out on the rear platform of said car to talk to a fellow passenger seated on the car steps; that

finding it had not reached the station, plaintiff, when the train again started up, which it did in a very short time, stepped back into the caboose on his way to his seat, and turned and was standing with his back to the engine and his hands against the casings of the rear door, when the train, with the caboose opposite the the depot platform, suddenly stopped with such a jar that plaintiff was knocked off his feet and his back injured in the fall against the corner of a box used for a seat; that three of his ribs were broken, in consequence of which he was confined to his room for two weeks and incurred a bill of $4.50 for medical services; that none of the passengers sitting down were hurt, but two among others who were standing were also knocked down by the jar. As to the character of the stop plaintiff testified:

"Q. Are you familiar with the way freight trains start and stop? A. Yes, sir; I think so. I take rides on them good deal at that time. Q. How was this? A. It was harder."

Another witness, a passenger, said:

"It stopped very suddenly. It was a very hard jar. It was much harder than ordinary. It came very near shoving me out of my seat."

And finally stated:

"A. Well, the train stopped very suddenly as I told you. The jerk was harder than ordinary. I have felt as hard jerks on a freight train I have ridden on, but this was something very uncommon. The jerk was very hard."

On cross-examination he said:

"Q. And you say you have observed other jars on freight trains that were just as sudden as this? A. O, yes. Q. The train in pulling up from one stop to the other didn't reach a speed of over three or four miles an hour at any point? A. No; I think not. Of course, it didn't go very fast. Q. Just pulling about its length? A. Yes, sir. Q. The jar from the stop was just about such a jar as usually resulted when the slack runs out of any train? A. No; I don't say that. I said it was something uncommon. I have felt such a jar, but it was an uncommon thing."

Another passenger said:

"It seemed unusually hard. It was more severe. It was a little extraordinary, I think."

A passenger seated in the cupola of the caboose said:

"The jar that caused this party to fall was not an unusually severe hard one. Nothing more than usually occurs on freight trains."

This is substantially all the evidence on this point.

Was there sufficient evidence of negligence to take the case to the jury? We think not. It is well settled, as said by the court in *Wait v. Omaha, K. C. & E. Ry. Co.*, 165 Mo. 612, 65 S. W. 1028, that, where a railroad company carries passengers for hire on its freight trains, "it must exercise the same degree of care as is required in the operation of its regular passenger trains; the difference only being that the passenger submits himself to the inconvenience and danger necessarily attending that mode of conveyance. *Whitehead v. St. Louis, I. M. & S. Ry. Co.*, 99 Mo. 263, 11 S. W. 751, 6 L. R. A. 409; *McGee v. Mo. Pac. Ry. Co.*, 92 Mo. 208, 4 S. W. 739, 1 Am. St. Rep. 706; *Wagner v. Mo. Pac. Ry. Co.*, 97 Mo. 512, 10 S. W. 486, 3 L. R. A. 156; *Hays v. Wabash Ry. Co.*, 51 Mo. App. 438; *Guffey v. Han. & St. J. Ry. Co.*, 53 Mo. App. 462; *Ohio & Miss. Ry. Co. v. Dickerson*, 59 Ind. 317; *Chicago & Alton Ry. Co. v. Arnol*, 144 Ill. 261, 33 N. E. 204, 19 L. R. A. 313; *Olds v. New York, etc., Ry. Co.*, 172 Mass. 72, 51 N. E. 450."

And, as stated in *Chicago & Alton Ry. Co. v. Arnold*, 144 Ill. 261, 33 N. E. 204, 19 L. R. A. 313:

"Persons taking passage upon freight trains, or in a caboose or car attached to a freight train, cannot expect or require the conveniences or all of the safeguards against danger that they may demand upon trains devoted to passenger service, and are accordingly held to have accepted the accommodations provided by the company, subject to all the ordinary inconveniences, delays, and hazards incident to such trains when made up and equipped in the ordinary manner of making up and equipping such trains, and managed with proper care and skill? * * * But, if a railway company consents to carry passengers for hire by such trains, the general rule of responsibility for their safe carriage is

not otherwise relaxed. From the composition of such a train and the appliances necessarily used in its efficient operation there cannot in the nature of things be 'the same immunity from peril in traveling by freight train as there is by passenger trains, but the same degree of care can be exercised in the operation of each. The result in respect of the safety of the passenger may be wholly different because of the inherent hazards incident to the operation of one train, and not to the other, and it is this hazard the passenger assumes in taking a freight train, and not hazard or peril arising from negligence or want of proper care of those in charge of it."

Applying these principles to the case in hand, what right have we in the light of evidence to attribute the injuries sustained by plaintiff to the negligence of the defendant rather than to the dangers necessarily attending the mode of conveyance adopted and which were assumed by plaintiff on taking passage. None whatever. There is nothing in the evidence which tends to prove other than the mere fact that the injury resulted from a jar caused by the taking up of the slack in the train on the stopping of the engine. It is contended by defendant that proof of the mere *factum* of the jar is not sufficient to send the question of negligence to the jury. In this we concur. In order to show negligence, it is not sufficient to prove the mere fact that plaintiff was injured by a jerk in the movement of the train or by a jar occasioned by its stopping. Such is not negligence *per se* or sufficient to justify its inference. In *Edwin v. Railway Co.*, 94 Mo. App. 289, 68 S. W. 88, the court said:

"When the fact that there is more or less jerking, and jolting incident to the operation of a freight train—a matter of common knowledge—is taken into view, negligence cannot be inferred from the mere fact that the plaintiff was injured by a jar occasioned by the stopping of the train. *Carvin v. St. Louis*, 151 Mo. 334, 52 S.W. 210; *Wait v. Railroad*, 165 Mo. 612, 65 S. W. 1028. The rule of *res ipsa loquitur* can only be applied where there is something which, if unexplained, tends to show that some negligence or omission of duty was the proximate cause of the injury. *Gallagher v. Edson Ill. Co.*, 72 Mo. App. 576."

The following cases support this doctrine: *Rockford, etc.*,

*Ry. Co. v. Coultas,* 67 Ill. 398; *N. & W. R. R. Co.* v. *Furguson,* 79 Va. 241; *L. & N. Ry. Co. v. Bisch,* 120 Ind. 549, 22 N. E. 662; *Frohriep v. Lake Shore, etc., Ry. Co.,* 131 Mich. 459, 91 N. W. 748; *Railroad Co. v. Humphrey,* 83 Miss. 721, 36 South. 154; *Timms v. Old Colony Ry. Co.,* 183 Mass. 193, 66 N. E. 997; *Birmingham N. Ry. Co. v. Hale,* 90 Ala. 8, 8 South. 142, 24 Am. St. Rep. 748; *Chicago & Western Indiana Ry. v. Bingenheimer,* 14 Ill. App. 125; *Herstine v. Lehigh Valley Ry. Co.,* 151 Pa. 245, 25 Atl. 104; *Allen* v. *Northern Pac. Ry. Co.,* 35 Wash. 221, 77 Pac. 204, 66 L. R. A. 804; *Johnson v. Interurban St. Ry. Co.* (Sup.) 88 N. Y. Supp. 866; *Denver & Rio Grande Ry. Co. v. Fotheringham,* 17 Colo. App. 410, 68 Pac. 978; *Conroy v. Detroit, etc., Ry. Co.,* 139 Mich. 173, 102 N. W. 641, 104 N. W. 319; *Byron Adm'x v. Linn, etc., Ry. Co.,* 177 Mass. 305, 58 N. E. 1015.

In *Wait v. Railway Co.,* 165 Mo. 612, 65 S. W. 1028, the facts were that plaintiff boarded defendant's freight train below the depot, thinking it would stop at the depot. After it had started up with sufficient speed to indicate that it was "off," plaintiff got out of his seat and stepped into the aisle to pull on his overcoat; that the train suddenly stopped, and he was thrown against the seat and badly injured. The court in the syllabus said:

"There was no evidence tending to show any defect in the track, train, or its appliances, or any want of skill or care on the part of the trainmen, or that the train was stopped at an improper place, or in an improper manner, or that the shock which caused the plaintiff's fall was not a natural and ordinary incident to a proper stopping of the train. Held, that the court properly sustained a demurrer to the evidence; there being no fact proved from which an inference of negligence on the part of the railroad company could be legitimately drawn."

*Hawk v. Railway,* 130 Mo. App. 658, 108 S. W. 1119, was a suit in damages for personal injuries alleged to have been caused by the negligence of the carrier. The facts were that plaintiff purchased from defendant's agent at Chillicothe a ticket entitling him to a ride to Hamilton, and took passage on its freight train consisting of an engine and 20 cars. At Breckinridge, an inter-

mediate station, the train took a side track for another train to pass, and stopped so suddenly that plaintiff, who was 75 years old, was thrown to the floor and injured. At the time he said he was seated with his face towards the east end of the car, and while in that position was thrown down by what he described as "a terrific shock sufficient to knock a man off his feet, and knock him senseless for a while." In the fall his head struck with sufficient violence to render him unconscious. Two witnesses testified that, before the car came to a stop, plaintiff had left his seat, and proceeded to the east door, where he stood looking east with his hands on the door jamb, when the sudden stopping of the train threw him backward to the floor. In passing, the court, in determining the question of whether or not a demurrer to the evidence should have been sustained, said:

"It is a matter of common knowledge that in starting and stopping such unwieldy trains sudden jolts and jars of varying degrees of violence are ordinary incidents even where such trains are handled with the greatest care. As such occurrences cannot be avoided in the exercise of due care, the rule is well settled that passengers assume the risk of injury by them as one of the perils of travel by that mode of conveyance. The fact that a sudden and violent jolt or jar accompanies the stopping of a freight train *ipso facto* will not raise a presumption of negligence. A passenger injured thereby to be entitled to recover from the carrier must go further; he must adduce the facts from which an inference of negligence fairly arises." (*Hedrick v. Railway*, 195 Mo. 104, 93 S. W. 268.)

*Young v. Mo. Pac. Ry. Co.* (Mo. App.) 84 S. W. 175, was a suit to recover damages for personal injuries sustained by plaintiff while a passenger riding on a stock pass in the caboose of defendant's freight train. The facts were that on July 11, 1901, while in transit, the train stopped in St. Louis, and one of the defendant's employes in charge of it announced the station and called to plaintiff to "get out"; that plaintiff in obedience thereto rose from his seat in the caboose, and started to leave the train, but before he had time to do so it, without warning, started with a violent jerk which threw him down and severly injured him

and knocked other passengers from their feet, or, to use an expression of one of the witnesses, "knocked them around promiscuously." There was a demurrer to the evidence which the trial court overruled, and which on appeal the Supreme Court held to be error and in passing said:

"One who travels on a freight train assumes the risks thereto —as for example, risks of injury from jerks or jolts incident to the movement of such trains. Elliott on Railroads, § 1582; *Erwin v. Railway Co.,* 94 Mo. App. 296, 68 S. W. 88. Negligence cannot be inferred from the mere fact that one has been injured from a jerk or jolt caused by the stopping or starting of such trains, since it is common knowledge that there is more or less jerking and jolting incident to the movement of them."

That plaintiff must go further in proof of negligence than merely show that he was injured as a result of a jerk in the movement of defendant's train is thus stated in *Sexton v. Railroad,* 98 Mo. App. 503, 72 S. W. 720:

"There was no evidence adduced which tended to prove that the jerk was unusual, extraordinary, or unnecessary, and not usually incident to the ordinary, careful, and efficient operation of the train. It was not enough to prove that there was a jerk in the movement of the train. One of the plaintiff's witnesses testified that it seemed to him that the jerk occurred when the train took up the slack, but it does not affirmatively appear, as it should, to show liability, that the jerk was an extraordinary or unusual one, attributable to a defect in the track, an imperfection in the car or apparatus, or to a dangerous rate of speed, or the unskillful handling of the engine by the engineer, or to something of that kind. *Bartley v. Railroad,* 148 Mo. 139, 49 S. W. 840; *Hite v. Railway,* 130 Mo. 136, 31 S. W. 262, 32 S. W. 33, 51 Am. St. Rep. 555, and other cases cited."

As in that case so in the case at hand. While it is not controverted that the jar occasioned the injury, it does not affirmatively appear, as it should in order to send the question of negligence to the jury, that the same was of extra severity and directly attributable to the negligence or careless handling of the engine by the engineer. In the absence of such evidence, we can but presume that the engineer did his duty, and that the sudden stop of the

train and the jar which caused the injury arose from exigencies of the service. In arriving at such conclusion and that the jar caused by the stopping of the train was not *ipso facto* negligence, and hence the proof insufficient to take the question of negligence to the jury, we are not unmindful of the testimony of the passengers as to the character of the stop, but the same has no weight with us for the reason that the probative force thereof is *nil*, are mere expression of opinion, and should not be considered in determining the question of the negligence of the defendant. As to such expressions we can say as was said in similar expressions of witnesses in *Guffey v. Railway Co.*, 53 Mo. App. 466, where the court said:

"We do not think these expressions of the witnesses are of any value whatever, or stated as much as a scintilla of evidence."

In *Young v. Mo. Pac. Ry. Co., supra,* the court said:

"It is true that plaintiff and his three witnesses testified their opinion to the effect, that the 'train made a heave forward just like lightning,' that 'it was an awful hard jerk,' and that 'the jerk was the most severe I have ever experienced.' Of course, the manifestly hyperbolical expression of opinion that 'the train heaved forward just like lightning' as evidence cannot be given the weight of a feather. The other expressions of the witnesses prove nothing. The jerks or lurch may have been 'awful hard' or the 'severest' the witness had ever experienced, and yet not that extraordinary or unusual jerk or lurch attributable to unskillful handling of the engine, or something of the kind. There was no fact proved to justify the inference that the jerk resulted from negligence."

In *Hawk v. Railway, supra,* the court said:

"We do not find any evidence in the record before us from which it may be said with reason that the jolt which accompanied the stopping of the train was extraordinarily violent. Plaintiff depicts it as a 'terrible shock,' 'a severe shock sufficient to knock the breath out of me,' but these expressions of a nonexpert witness amount to nothing more than mere conclusions and possess no probative value."

In this view of the case it becomes unnecessary to discuss the question of contributory negligence or instruction 6, given to the jury over the objection of defendant, wherein the court charged,

in substance, that, if the jury found that the injury complained of resulted from the "wilful negligence" of defendant, the jury might assess punitive damages further than to say that, defendant not being chargeable under the evidence with any negligence whatever, it certainly was not guilty of "wilful negligence," whatever that may mean. As the burden was on the plaintiff to prove negligence as alleged in his petition, and as in this we think he failed, we are of the opinion that the court erred in overruling the motion to direct a verdict for defendant, and for that reason the case is reversed and remanded for a new trial.

All the Justices concur.