[No. 10633. Department Two. February 8, 1913.]

## STEWART M. WILE, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

CARRIERS—INJURIES TO PASSENGERS—SUDDEN JERKS AND JARS. Evidence that a passenger on a mixed freight train was thrown to the floor by a sudden jolt is insufficient to sustain a recovery for the injuries sustained in the fall, where there was no evidence that there was anything unusual or more than the ordinary jerking or jolting necessarily incident to the operation of freight trains; since negligence cannot be inferred therefrom.

SAME—PRESUMPTIONS. The rule of *res ipsa loquitur* has no application to a case in which a passenger on a freight train was thrown to the floor by a sudden jolt in the operation of the train.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered March 25, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an

[1]Reported in 129 Pac. 889.

action for personal injuries sustained by a passenger on a railway train.   Reversed.

*C. H. Winders*, for appellant.

*Neterer & Pemberton*, for respondent.

Morris, J.—Damages are asked for in this case, based upon the claim of respondent that he was injured by being thrown against the corner of a seat while a passenger upon one of appellant's mixed trains.   The allegation of negligence is, that "defendant so negligently and carelessly operated the engine detached from the said car, by backing and bumping same against the car on which plaintiff was riding while said car was standing still, with great force and such force as to move the car with such suddenness and force as to throw the plaintiff down."   The claim of error is that the evidence is insufficient to sustain this allegation, and that appellant's motion for judgment notwithstanding the verdict should have been granted.

The train upon which respondent took passage was composed of thirty freight cars and a passenger car.   Respondent was lame and walked with a limp, one of his legs being shorter than the other.   He generally carried a cane or stick to assist him in walking.   When the train arrived at Wheeler, and after it had been standing some time, respondent arose from his seat and started to walk to the other end of the car to obtain a drink of water.   He did not take his stick with him, but left it in his seat.   He had taken only a few steps when, he says, "there came in from in front a bump which took me about three or four feet off my feet, and then I went to catch myself and I fell over."   He says again, in response to a question as to the force of the jolt: "Well, there was force enough to take me about four feet and then the length of myself."   There is no other testimony in the record as to the jerk or jolt to which respondent attributes his fall.   He says that the car in which he was riding frequently received the same kind of a jolt or jar both before and after the one which

caused his fall. There was no testimony showing other facts incident to the occurrence, such as any unusual disturbance, nor did respondent attempt to show that the jolt or jar was greater than is ordinarily incident to the operation of freight trains with passenger accommodations attached.

The law, as established by a long list of authorities in cases of this character, will not support a recovery until there is some evidence to justify a finding by the jury that the thing complained of was something more than the ordinary jerking or jolt necessarily incident to the operation of freight trains, or results from defects in equipment or roadbed, negligence of train operations, or other causes leading to a belief that it was an unusual happening and one which could not be said to be the ordinary and usual disturbance caused by the handling of freight and the backing and filling incident to the work performed by trains of such a character.

"It is a matter of common knowledge that jolts and jerks are usual incidents in the operation of freight trains and therefore negligence cannot be inferred from the mere fact that a passenger's injury resulted from a jar, caused by the sudden stopping of such a train. In other words, a jar, or jerk, in a freight train, is not of itself evidence of negligence." 2 White, Personal Injuries on Railroads, § 670.

In the preceding section 669, the same author says—

"A railroad company, undertaking to carry passengers for hire, upon freight trains, owes them the same duty, as to care, which the law exacts of it as to passengers transported on passenger trains, the only difference being that the passengers on freight trains assume those dangers or perils which are necessarily incident to that mode of conveyance. . . . A passenger on a freight train is charged with knowledge of and assumes the increased hazards, incident to that mode of travel, and he accepts passage with notice that the train is not equipped with all the safeguards provided for passenger trains and the risk of injury due to this fact."

Elliott on Railroads states the same rule in vol. 4, § 1629, and says:

"The duty of the company is therefore modified by the necessary difference between freight and passenger trains and the manner in which they must be operated, . . . nor is the company necessarily negligent, because in starting or in taking up or letting out slack there is more or less of a jerk or sudden motion of the cars."

Thompson, in vol. 3, § 2903, of his Commentaries on the Law of Negligence, announces the same rule. A late case, reviewing many of the authorities in cases of this character, is *St. Louis & S. F. R. Co. v. Gosnell*, 23 Okl. 588, 101 Pac. 1126, 22 L. R. A. (N. S.) 892, where, after stating the rule as derived from the many authorities reviewed, in a case where the injured person, while standing with his hands against the casings of the rear door of the caboose attached to a freight train upon which he had taken passage, was thrown down and injured by the sudden stopping of the train, with a jar such as to cause him to leave his feet, it was held there could be no recovery. There was in that case, as in this, nothing to show that the jolt or jerk was anything more than was to be anticipated in a train of this character. It is there pointed out as well established that, before a recovery can be sustained in these cases, there must be some evidence to justify the conclusion that the jolt or jar was of such unusual severity that it was not attributable to the jerking and jolting incident to the operation of freight trains. There are many cases in which recovery has been sustained for injuries resulting from jerks, jars and jolts on freight or mixed trains, but in all of these cases there was evidence that the cause of the injury was other than a necessary incident to the careful operation of such trains, and the facts and circumstances surrounding the injury were such as to speak negligence.

The rule for which we contend does not lessen the degree of care demanded by the law to the passenger on a railway train. It is the same, whatever be the character of the train upon which he rides. The life and safety of the passenger on the freight train is as valuable to him as that of his more

fortunate brother who rides upon the most elaborate train *de luxe*. The duty in each case is the highest degree of care consistent with good railroading. The law cannot, however, blind itself to the common facts of every-day experience, and it takes knowledge of the fact that, with the highest care known to modern railroading, the best built Pullman or drawing room car will lurch and sway, bringing a risk of injury to the passenger which he assumes, because scientific railroading knows no way to avoid it. *Valentine v. Northern Pac. R. Co.*, 70 Wash. 95, 126 Pac. 99. So, for the same reason, the passenger on the freight must assume the risk of injury from causes that are incident to the operation of such trains, and when he pleads an injury as the result of negligence in the operation of such a train, . he must prove it by going farther than saying, while he was walking or standing in the car, a sudden jerk or jolt threw him to the floor. Because of his crippled condition, respondent usually carried a stick to aid him in walking. When he arose to walk to the water tank, he left his stick in his seat. It is, we think, evident that, under these circumstances, an ordinary jerk or jolt would cause him to lose his equilibrium. We agree with counsel for respondent that, while it is the law that one who rides upon a mixed train assumes the usual and incidental jerks necessary in the operation of the train, he does not assume the extraordinary jerks and jars resulting from the negligence of those operating the train. There is, however, no evidence in the case that the jerk causing respondent's injury was of the latter kind, and until there is some evidence of that fact, the law will assume that, since freight trains will jerk and jar, when one testifies he was injured by a jerk or jar on such a train, without going farther and coupling it with some negligent act, the jerk was the ordinary jerk assumed as an incidental risk to such a journey.

It is also contended by respondent, and the court below in effect so charged the jury, that the rule of *res ipsa lo-*

*quitur* applies to cases of this character, and that it was incumbent upon appellant to show its freedom from negligence. Such a rule, admitting its force in a proper case, has no application here. It can only be applied under circumstances where the act itself is of such a character that with due care it would not ordinarily happen. *Lewinn v. Murphy,* 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912 D. 433. So far as we know, it has never been applied to a case where the injury resulted from an ordinary incident. As applied to railways, it has been held that, where the injury was the result of a collision, derailment, or some defect in the roadbed, cars, or equipment of the train, the rule under discussion was properly applied; but it is not the law that, where a passenger upon a railway train is injured, with no showing of some facts of the nature of those above referred to, there is a legal presumption of negligence, casting upon the carrier the burden of disproving it. *Allen v. Northern Pac. R. Co.,* 35 Wash. 221, 77 Pac. 204, 66 L. R. A. 804; *Hawkins v. Front St. Cable R. Co.,* 3 Wash. 592, 28 Pac. 1021, 28 Am. St. 72, 16 L. R. A. 808; *Klepsch v. Donald,* 8 Wash. 162, 35 Pac. 621; *De Yoe v. Seattle Elec. Co.,* 53 Wash. 588, 102 Pac. 446, 104 Pac. 647, 1133. See, also, *St. Louis & S. F. R. Co. v. Gosnell, supra,* where many cases supporting the rule as here announced are cited.

For these reasons, it was error to deny appellant's motion for judgment notwithstanding verdict. The judgment is reversed, and the cause remanded with instructions to dismiss.

Mount, Main, and Ellis, JJ., concur.