## RAMSEY v. McKAY.

No. 4056.   Opinion Filed January 30, 1915.

(146 Pac. 210.)

1.  **CARRIERS—Injury to Passenger—Instructions—Mixed Train.**
    An instruction under section 1381, Comp. Laws 1909 (section
    1424, Rev. Laws 1910), is sufficient, which provides: "You are
    also instructed when fare is taken by any railroad corpora-
    tion for transporting ·passengers on any mixed train, passen-
    ger or freight cars, or in baggage, wood, gravel, or freight
    cars, the same care must be taken and the same responsibilities
    are assumed by the corporation as for passengers on passenger
    cars"

2.  **SAME—Evidence.**  Evidence tending to show the occurrence
    of a sudden stop of a freight train of sufficient violence to
    throw the conductor, brakeman, plaintiff, and another passen-
    ger in a pile on the floor of the caboose, together with an ad-
    mission, at the time of the injury on the part of the conductor,
    that the engineer made the sudden stop on purpose, etc., is suf-
    ficient to justify an inference of some breach of the duty owed
    to the injured person by the carrier, and casts the **onus** upon
    it of relieving itself of responsibility by showing that the
    injury was the result of an accident which the exercise of due
    skill, foresight, and diligence could not have prevented.  Fol-
    lowing **St. Louis & S. F. R. Co. v. Fitts,** 40 Okla. 685, 140 Pac.
    144.

(Syllabus by Rittenhouse, C.)

*Error from District Court, McClain County;*

*R. McMillan, Judge.*

Action by G. W. McKay against the Oklahoma Central Ry.
Co., a corporation, and Asa E. Ramsey, receiver for the Okla-
homa Central Railway Company. Judgment for plaintiff, and
defendant brings error.   Affirmed.

*Dorset Carter,* for plaintiff in error.

*W. L. Eagleton,* for defendant in error.

Opinion by RITTENHOUSE, C.   On the morning of May
28, 1910, defendant in error, plaintiff below, purchased a ticket
from Asa E. Ramsey, receiver of the Oklahoma Central Rail-
way Company, at Purcell, Okla., and took passage on one of the

freight trains running from that point to Rosedale. It is al-
leged that when the train was nearing Rosedale, and while said
plaintiff was a passenger thereon, said train was by the acts of
the servants and agents of said company negligently and care-
lessly handled by stopping the train suddenly, so that the car
in which said plaintiff was at the time seated bumped against
that part of the train immediately in front of and next to the
car in which said plaintff was at the time seated; that plaintiff
was thereby thrown from his seat against the side of the car
and his head struck with such force that he was greatly bruised
and wounded. The jury returned a verdict in favor of plain-
tiff in the sum of $750, and judgment was rendered thereon
on February 26, 1912, and the cause brought here for review.

Section 1381, Comp. Laws 1909 (section 1424, Rev. Laws
1910), provides that:

"When fare is taken by any railroad corporation for trans-
porting passengers on any mixed train of passenger and freight
cars, or on any baggage, wood, gravel or freight car, the same
care must be taken and the same responsibility and duties are
assumed by the corporation as for passengers on passenger
cars."

Under this section of the statute the court instructed the
jury:

"You are also instructed, when fare is taken by any rail-
road corporation for transporting passengers on any mixed
train, passenger, or freight cars, the same care must be taken
and the same responsibilities are assumed by the corporation as
for passengers on passenger cars."

It is contended by the plaintiff in error that this instruc-
tion is far short of what the court should have given to the
jury as the law in the case, and suggested that its shortcomings
are patent to the court without argument and without reference
to authorities, relying upon the case of *St. L. & S. F. R. Co. v.
Gosnell*, 23 Okla. 588, 101 Pac. 1126, 22 L. R. A. (N. S.) 892,
wherein the court said, in addition to using the words of the
statute, that:

"The difference only being that the passenger submits himself to the inconvenience and danger necessarily attending that mode of conveyance."

The instruction given by the court was in the words of the statute, and was a concise statement of the law relative to the degree of care and responsibility assumed in riding upon the class of trains under discussion. If, however, the instruction needed the additional limitation, as contained in the Gosnell case, instruction No. 8 was sufficient:

"You are told that, where the passenger chooses a mixed or freight train instead of a regular passenger train, the passenger submits himself to the inconvenience and dangers necessarily attendant on that mode of travel; that when a passenger chooses to ride upon a freight train, or a mixed train, instead of a regular passenger train, he cannot expect, or require the convenience or all the safeguards against danger, that may be demanded and expected upon trains devoted exclusively to passenger service."

The next assignment of error is: "Did plaintiff below make a *prima facie* case?" This requires a statement of the evidence offered. Witness McKay testified:

"Q. Well, now, did anything out of the ordinary or unusual occur between here and Rosedale; if so, just relate what did occur?   *   *   *   A. The train stopped suddenly as though it had collided with another train,   *   *   *   and I was thrown.   *   *   *   For some time, I could not tell how long, for some time I was unconscious.   *   *   *   A. It was a sudden jar against something; stopped all of a sudden.   *   *   *   They laid me on one of the benches first thing I remember of.   *   *   *   A. I have traveled a little bit in my time. I have traveled on both local trains that carry passengers and freight, and also on trains that do not carry passengers that I was shipping stock.   *   *   *   Go over on the local in the evening and go back on the passenger in the morning. Q. You say that was a frequent occurrence? A. Yes, sir.   *   *   *   A. Well, I can state that I have shipped from one to—I think I can safely say from one to six—car loads a month for three years. When shipping I often go to Kansas City with the stock, and by that means had experience in the regular through trains.   *   *   *   A. I would state that I never had an experience in riding that

was equal to this. I was never thrown from my seat or had any collision or collided with a sudden stop; never before anything equal to this. A. * * * the train stopped; it stopped as though it had collided against. * * * A. When the train stopped I was thrown. * * *I did not know anything after the sudden stop until I was laid on the bench or seat along the side of the car. * * *"

And Witness Long testified:

"A. When we got to Rosedale, the train came to a very sudden stop with a crash. * * * I was sitting on a long bunk, throwed me off the bunk. I saw all the rest of them down. * * * Saw George McKay, railroad conductor and brakeman, and the man that was going with us down there. * * * These all was laid in a pile on the floor. When I got up, why the others were getting up, except Geo. McKay. * * * A. I had ridden on freight trains a great deal in my life. I never experienced such a jar as that. * * * I have had considerable experience. I followed shipping stock. I have rode on freight trains from Guthrie to Chicago, and where I live in Oklahoma to Ft. Worth, Texas, at different times. * * * A. I could not tell how frequently, very often I rode from Coyle to Guthrie, nearly every week on the local. Q. That for several years? A. Yes, sir. * * * A. I think it was very unusual."

Witness Long also testified that immediately after the injury the conductor, who had control of the train, remarked at the time that he would go and jack the engineer up; that this was the second time he had done this, and on pages 54 and 55 of the case-made he testified:

"I suppose it was the conductor; he took up the tickets. He made this remark, he said the engineer done that on purpose. He said he would go and give him a jacking up."

This testimony, in connection with the testimony of the other witnesses that the stopping of the train was of unusual and extraordinary severity, when taken in connection with the injury which followed, is sufficient to make out a *prima facie* case of negligence.

Chief Justice Kane, in commenting upon this subject in the case of *St. L. & S. F. R. Co. v. Fitts*, 40 Okla. 685, 140 Pac. 145, said:

"The contention of counsel for the railroad company is that the foregoing evidence and other circumstances shown by the record present a case identical in principle to *St. L. & S. F. R. Co. v. Gosnell,* 23 Okla. 588, 101 Pac. 1126, 12 L. R. A. [N. S.] 892, and that this case must be governed by the opinion in that case. From an examination of the many cases cited by counsel for the respective parties, it is apparent that there is considerable difference in opinion as to whether proof of the injury to a passenger, resulting from a jerk of the train or car wherein he is riding, raises a presumption of negligence against the carrier. Each case, it seems, must depend largely upon its own peculiar facts in applying the rule of *res ipsa loquitur.* While there seems to be no well-defined line of divergence between passenger and freight train cases, there is very little doubt that the rule applied to the facts developed in *St. Louis & S. F. R. Co. v. Gosnell, supra,* pertaining to a passenger upon a freight train, is supported by a preponderance of the freight train cases. The cases from Missouri, copiously quoted from in the opinion, and which probably influenced the court more than any others in reaching its decision, are all freight train cases and all support the doctrine laid down in the opinion, except *Guffey v. H. & St. J. Ry. Co.,* 53 Mo. App. 462. The general rule, however, is that where the thing which causes the accident is exclusively controlled or managed by the carrier, and the accident is such as in the ordinary course of events does not happen if those who have the control or management use proper care, it affords reasonable evidence, in the absence of explanation by the carrier, that the accident arises from want of care. *Gilmore v. Brooklyn Heights Ry. Co.,* 6 App. Div. 117, 39 N. Y. Supp. 417. Among the cases governed by the foregoing rule are those where the injury arose from sudden starts, sudden stops, jerks, jolts, etc. The tendency of the decisions seems to be that if the jerk is of such violence that it would not be one likely to occur, or necessary, in the ordinary operation of transportation, a presumption of negligence will arise. It has been held that a very violent jerk of a car, resulting in injury to a passenger, raises a presumption of negligence against the carrier. *Chicago City R. Co. v. Morse,* 98 Ill. App. 662; *Evansville & T. H. R. Co. v. Mills,* 37 Ind. App. 598, 77 N. E. 608; *Southern R. Co. v. Cunningham,* 123 Ga. 90, 50 S. E. 979. And that a violent jerk, throwing a passenger down and out of a car, raises a presumption of negligence in the carrier. *Ill. Cent. R. Co. v. Beebe,* 69 Ill. App. 363; *Griffin v. Pacific Elec. R. Co.,*

1 Cal. App. 678, 82 Pac. 1084; *Scott v. Bergan County Traction Co.*, 63 N. J. Law, 407, 43 Atl. 1060; *Consolidated Traction Co. v. Thalheimer et al.*, 59 N. J. Law, 474, 37 Atl. 132; *Lomas v. N. Y. Realty Co.*, 188 N. Y. 628, 81 N. E. 1169. And that evidence that a passenger standing on the running board of a crowded car was thrown off and killed by a jerk sufficiently violent to throw standing passengers off their footing makes a *prima facie* case against the carrier. *Sheeron v. Coney Island & B. R. Co.*, 78 App. Div. 476, 79 N. Y. Supp. 752. And that where a passenger, while free from contributory negligence, is thrown from his seat and injured while going around a curve, a presumption of negligence arises. *Fitch v. Traction Co.*, 124 Iowa, 665, 100 N. W. 618. Other cases in point to the same effect are *Lavis v. Wisconsin County Ry. Co.*, 54 Ill App. 636; *Dougherty v. Mo. Ry. Co.*, 81 Mo. 325, 51 Am. Rep. 239; *B. U. Ry. Co. v. Hale*, 90 Ala. 8, 8 South. 142, 24 Am. St. Rep. 748; *Murphy v. Coney Island & B. Ry. Co.*, 36 Hun (N. Y.) 199; *Guffey v. H. & St. J. Ry. Co.*, 53 Mo. App. 462; *Burr v. Penn. Ry. Co.*, 64 N. J. Law, 30, 44 Atl. 845."

It is self-evident that the sudden stop in the instant case was of such violence that it would not be one likely to occur, or necessary in the ordinary operation of the train in question, and, while the employees of the defendant company testified that the sudden stop was an ordinary and likely occurrence in handling this class of trains, yet the evidence that the plaintiff was thrown by the sudden stop of the train, as was also the conductor and brakeman and another party who was accompanying the shipment, and they fell in a pile on the floor, taken in connection with the statement of the conductor who was in charge of the train, in which he said that the engineer had made the sudden stop on purpose, and that it was the second time he had done it on that particular day, and that he would go and give him a jacking up, was sufficient to make a *prima facie* case and cast upon the railroad company the burden of relieving itself of responsibility by showing that the sudden stop was the result of an accident which the exercise of due skill, foresight, and diligence could not prevent.

The cause should, therefore, be affirmed.

By the Court: It is so ordered.